SUMMERLIN *et al. v.* FRONTERIZA SILVER MINING & MILLING Co. *et al.*

(*Circuit Court, W. D. Texas.* February 6, 1890.)

1. CORPORATIONS—CONTRACTS—ACTION BY STOCKHOLDERS.
   Complainants alleged that they and certain other persons agreed to organize a corporation for the purpose of operating mines. That afterwards they organized a mining company, adopted by-laws, and elected officers. That at a regular meeting of said corporation it was agreed that the capital stock should be divided among the different members thereof, complainants to receive a certain number of shares. Subsequently complainants were induced to resign from the board of directors in order to let in other investors; they being promised that their interests should remain the same. That thereafter they were excluded from the meetings, and denied all knowledge of the affairs of the corporation. That a new distribution of stock was made, the original distribution being disregarded, and the shares of stock which had been allotted to complainants were allotted to others. *Held,* that all these allegations did not show any contract on the part of the company as such, nor that the company, as such, had taken part in the alleged wrongful acts, and it could not be made a party defendant to an action to compel the issue to the complainants of the shares of stock originally allotted to them, or for damages in case such shares could not be issued.

2. PARTIES—MISJOINDER—ACTION TO COMPEL ISSUE OF STOCK.
   Where it appears from the complaint that the complainants have no community or privity of interest, not being stockholders in the defendant company, and that the contract with each complainant was separate, and there was no privity in the consideration, a demurrer to the complaint on the ground of misjoinder of complainants will be sustained.

3. EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW.
   Where it appears from the face of the complaint that there can be no specific performance of the contract allotting certain shares to complainants, and that the recovery, if any, must be limited to a money decree, for damages for non-performance, the complainants have a complete and adequate remedy at law, and an action in equity will not lie.

4. SAME—ACCOUNTING.
   The complainants not being stockholders in the company, there is no trust relation existing between them and the company that calls for an accounting in equity.

5. PRACTICE—DISMISSAL.
   In an action against several defendants, where the complaint contains no allegations connecting one of the defendants with the cause of action stated therein, the complaint will be dismissed as to him.

In Equity.  On demurrer to bill.

This action was brought by R. L. Summerlin and George F. Lupton against the Fronteriza Silver Mining & Milling Company, C. E. Lyman, George M. Wakefield, and R. C. Russell. The bill alleges the following facts:

"(1) Robert L. Summerlin and George F. Lupton, of San Antonio, Tex., and citizens of the state of Texas, bring this, their bill of complaint, against the Fronteriza Silver Mining & Milling Company, a corporation duly organized and operated under the laws of Colorado, and a citizen of the state of Colorado, having a branch office at San Antonio, Bexar county, Tex., and doing business thereat, and C. E. Lyman, George M. Wakefield, and R. C. Russell, citizens of the state of Wisconsin.

"(2) And thereupon your orators, R. L. Summerlin and G. F. Lupton, complain and say that on or about the ——— day of ———, A. D. 1885, an agreement was made by and between certain persons hereinafter named, to form and organize a corporation for the purpose of buying, selling, bonding, developing, and operating mines and mining property, and for smelting, reducing, preparing, refining, and selling the products thereof, and for buying and

selling minerals; and in pursuance of said agreement, and on or about the 31st day of August, A. D. 1886, the following persons, to-wit, G. W. Angle, R. H. McCracken, Joseph W. Maddox, Robert L. Summerlin, A. A. Alexander, George F. Lupton, and Charles W. Ogden, formed and organized a corporate body, under the laws of Colorado, named and known as the 'Fonteriza Silver Mining & Milling Company,' the articles or certificate of which corporation were duly filed in the office of the secretary of state of the state of Colorado on the 17th day of September, 1886, A. D. at 9 o'clock A. M. of said day, and recorded in book 14, page 601. All of which will more fully appear, as well as other matters and things herein alleged, in a correct copy of the articles of incorporation of said corporation annexed to the original bill, and marked 'Exhibit A,' and prayed to be considered a part hereof.

"(3) Your orators further complain and say that subsequently, to-wit, on or about the ——— day of September, A. D. 1886, the members of said corporation, as aforesaid, convened in San Antonio, Tex., and in accordance with the provisions of said articles of incorporation, adopted a code of by-laws to regulate the method of conducting the business of said corporation. All of which will more fully appear by reference to a correct copy of said by-laws annexed to the original bill, marked 'Exhibit B,' and prayed to be taken as a part of this bill of complaint.

"(4) Your orators further complain and say that at the meeting of the members of said corporation held in San Antonio, Tex., the following officers were elected in accordance with the charter and by-laws of said corporation, to-wit: Geo. W. Angle, president; Charles W. Ogden, vice-president; A. A. Alexander, treasurer; R. H. McCracken, superintendent; and S. M. Johnson, secretary.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"(7) Your orators further complain and say that when the contract for the purchase of the said Fronteriza silver mine was made and completed the corporation, as aforesaid, was formed and organized as hereinbefore alleged, and it was agreed at a regular meeting of said corporation that the capital stock of $1,000,000, as provided by the articles of incorporation, should be allotted and divided, and was allotted and divided, by a resolution of the board of directors, as follows: 33,000 shares were to be reserved as a treasury fund, for the payment of the accruing purchase money for said Fronteriza silver mine as it became due and payable, and for the purchase and erection of machinery for working the said Fronteriza silver mine; 13,000 shares were allotted to said G. W. Angle; 13,000 shares to said R. L. Summerlin; 13,000 shares to said J. W. Maddox; 13,000 shares to said R. H. McCracken; and 15,000 to said G. F. Lupton. It was also agreed at the said regular meeting of the said corporation that the said G. W. Angle, R. L. Summerlin, J. W. Maddox, and R. H. McCracken should each contribute 1,250 shares out of their individual allotments, making an aggregate of 5,000 shares, for the use and benefit of Charles W. Ogden, who was the attorney and legal adviser of the said mining corporation, and the same was accepted by said attorney for all legal services rendered or to be rendered. And it was also agreed at the said meeting of the said mining corporation that if the proceeds of the sale of the said treasury stock should not be exhausted in the payment of the purchase money for the said silver mine, and for the procurement and placing of said machinery to be used as aforesaid, the residue thereof was to be equally divided among the members of the said mining corporation, share and share alike.

"(8) Your orators further complain and say that it was mutually understood and agreed that each and every one of the corporate members of the Fronteriza Silver Mining & Milling Company was authorized and empowered to sell the stock reserved for a treasury fund, or hypothecate the same, for the common purpose of successfully promoting the enterprise; and it was also

agreed that the stock allotted to individual members of the said mining corporation, as hereinbefore proportioned and distributed, or agreed to be distributed, should not be sold or disposed of in any way without the consent of all the original members of the said corporation.

"(9) Your orators further complain and say that in September, A. D. 1886, the said corporation, by and through its board of directors, determined and agreed to dispose of a portion of the said treasury stock for the purpose of creating a fund to pay current expenses, and to procure additional machinery for operating and working the said Fronteriza silver mine more successfully; and in furtherance of these objects the said silver mine was examined and inspected by Dr. N. T. Lupton, and the facilities for working the same were accurately ascertained, and assays of ore made, in order to profitably dispose of the said treasury stock, as will more fully appear from Exhibit C to original bill, etc.; and that the first payment of the purchase money for said silver mine was made on or about the 19th day of October, A. D. 1886, when the said corporation began working and operating the said silver mine, and have continued to work and operate the same until the present time.

"(10) Your orators further complain and say that the said corporation, through its officers and agents, represented to your orators that certain investments in the said silver mine would be made if said investors were allowed representation, and the same could be had and obtained, on the board of directors, and thereupon your orators were requested to resign their positions as directors, and were assured that their interests would not be jeopardized, but would remain the same; and upon this assurance and promise, having faith and confidence in the said representations of the officers and agents of the said corporation, and for the purpose of furthering the interests thereof, your orators placed their resignations as members of the board of directors of said corporation in the hands of the president thereof.

"(11) Your orators further complain and say that some time in 1887 the said corporation was in need of funds to successfully promote its interests, and thereupon the complainant R. L. Summerlin made arrangements with certain capitalists to supply the required funds as needed for the uses and purposes of the said corporation, which arrangements were made after the resignations aforesaid; and, for the purpose of thwarting and destroying the said arrangement, a false report, prejudicial to the value of said silver mine as an investment, was procured and secretly exhibited and read to the said capitalists, for the purpose, and with the corrupt design, of deterring them from investing in the same: and your orators charge that the said corporation had positive knowledge that the said pretended report upon the said Fronteriza silver mine was false, and was designed for the fraudulent purpose of deceiving and misleading the said capitalists, and breaking up the said arrangements for procuring funds, and for preventing your orators from engaging in the business affairs of said corporation, and for defrauding them out of their just and legal rights as members of the said corporation.

"(12) And your orator R. L. Summerlin complains and says that in the formation and organization of said corporation, and in furthering its interests, he has expended much time and labor, and has used his knowledge and information to promote the same, besides various sums of money expended in behalf of said corporation, amounting to about three thousand dollars, ($3,000;) that he has never received a dollar in return for his services, skill, and money, and, in violation of all agreements, and contrary to his rights as a charter member of said corporation, he has not received a single share of the stock allotted to him, although he has often requested and demanded his apportionment, under the allotment agreed upon between the corporate members of said corporation; and that he was entitled to receive his distributive share of stock when the said corporation was organized, and after the said stock had

been set apart for the working capital or treasury fund, which was on or about the ——— day of ———, A. D., 1886.

"(13) Your orator G. F. Lupton complains and says that he has expended much time and labor in advancing the interests and business of the said corporation, besides expending various sums of money, to-wit, one thousand dollars, ($1,000,) 'for the report made by Dr. N. T. Lupton upon the Fronteriza silver mine, and various other sums, aggregating about' sixteen hundred dollars, ($1,600;) and that he has not received his apportionment of stock as agreed upon, and due him, at and upon the organization of the said corporation, although he has frequently demanded the same, and was refused as herein more specifically stated and set forth, and has received nothing whatever from said corporation, either in money, stock, or other things of value.

"(14) Your orators further complain and say that since their resignations, obtained as aforesaid, they have endeavored in divers ways to ascertain when and where the meetings of the said corporation were or would be held, and what progress had been made, and what was the condition of the affairs of said corporation, to all of which inquiries no answer or information was given or obtained; and your orators further say that the said meetings of the said corporation were held at times and places unknown to them, and they are informed and believe, and so charge the truth to be, that a meeting of the Fronteriza Silver Mining & Milling Company was secretly held some time in October, A. D. 1887, and without notice to them, and that a re-election of officers was held, and a new distribution and reallotment of stock was made, by the said corporation, and that the original distribution or allotment was disregarded, set aside, and held for naught; and that out of the 100,000 shares of stock, being the entire capital stock of the corporation, your orators were allotted nothing, although, as charter members of said corporation, and by virtue of the original allotment at a regular meeting of said corporation, and by a unanimous vote of the members thereof at a regular meeting of the board of directors, your orators were legally entitled to receive 26,750 shares of stock,—the evidence of which is in the possession of defendant.

"(15) Your orators further complain and say that the said Fronteriza Silver Mining & Milling Company is now operated and governed by the articles of incorporation formed according to and under the laws of the state of Colorado, and that the said corporation has distributed the shares of stock allotted to your orators among the present members of the said corporation, and which said stock belonged to your orators, and was issued for their use and benefit, but never delivered to them; all of which was in violation of their corporate rights, and to which they were entitled as charter members of the said corporation at the time of the organization thereof. And they further say that they at divers times demanded their proportionate shares of stock from the said corporation, and, although the officers and agents thereof were able to deliver the respective allotments of stock as originally agreed upon, and voted to your orators at a regular meeting of the directors, yet they have persistently refused to deliver the shares of stock as aforesaid, and do still refuse so to deliver the same to your orators, and continue to hold, use, and enjoy the same.

"(16) Your orators further complain and say that the said 26,750 shares of stock allotted to them as aforesaid were held by the said corporation for the use and benefit of your orators, and under an express agreement, as aforesaid, that the same were not to be transferred, sold, or hypothecated without the consent of all the members of the said corporation, and are now wrongfully withheld from them.

"(17) Your orators further complain and say that the said corporation, through its board of directors, have misappropriated or misapplied the said shares of stock allotted to your orators by increasing and enlarging the original

allotment to the members of said corporation, and that under said illegal and fraudulent distribution of stock G. W. Angle, the president of said corporation, received 18,887 shares, being an excess of 5,887 shares over the original allotment, and in excess of what he was entitled to; R. H. McCracken, superintendent of said corporation, received 18,887 shares being an excess of 5,887 shares over the original allotment, and over what he was entitled to; C. W. Ogden, attorney, etc., of said corporation, received 8,000 shares, being an excess of 3,000 shares over the original allotment, and what he was entitled to; and others, who are non-stockholders in said corporation at such redistribution received large amounts of such shares of stock, all of which aggregate an excess of stock over the amount allotted to, and owned by, and to which they were and are now entitled, and which is now wrongfully withheld from them by the said corporation.

"(18) Your orators further complain and say that this suit is not simulated, or the result of collusion with other parties in order to confer jurisdiction on this court, but is real and instituted for the sole purpose of obtaining a redress of the wrongs complained of herein against the defendant corporation.

"(19) Your orators further complain and say that they have made every reasonable effort to obtain the shares of stock allotted to them from the said corporation, and have endeavored to ascertain the place of meeting of said corporation, to the end that they might induce the directors and officers thereof to take some action in their behalf, but without avail. On the contrary, the said officers and agents of the said corporation neglected and failed to give the annual notice demanded by law, in the newspapers, of the time and place of meeting of said corporation; and that they neglected and failed to mail a printed notice to your orators at least thirty days previous to each meeting, or any notice whatever, verbal or otherwise, in utter violation of the charter and by-laws of said corporation, and have also refused access to and inspection of the records, books, and papers of the said corporation to your orators.

  *     *     *     *     *     *     *     *     *

"(21) Your orators further complain and say that the said Fronteriza silver mine has been, and is now, successfully operated and worked by the said corporation, producing a large revenue to the stockholders thereof, of which your orators have received nothing, and yet the said corporation refuses to deliver to them the said 26,750 shares of stock, or any part thereof, or to pay the value thereof, although your orators have repeatedly demanded the same; that the par value of said stock is fixed at ten dollars per share, and the aggregate value of said stock is $267,500; and that the said shares of stock allotted to and belonging to your orators are worth far more than the par value in the market.

"That the said corporation called and known as the 'Fronteriza Silver Mining & Milling Company,' by and through its proper officers, may be compelled to deliver to your orator Robert L. Summerlin 11,750 shares of stock in said corporation, and to your orator George F. Lupton 15,000 shares of the stock of said corporation, being in the aggregate 26,750 shares allotted to your orators by said corporation at its organization, or, if that cannot be done, by reason of the sale, transfer, hypothecation, misappropriation, or any other disposition of the said shares of stock, that an account may be taken, by and under the direction of this honorable court, concerning all the corporate dealings and transactions in and about the sale, transfer, hypothecation, or misappropriation of the said shares of stock allotted or agreed to be distributed to your orators, and how much was realized therefrom, and what, if anything, was due to your orators, and what dividends have been declared or profits made from the sale of silver ore or bullion; and that whatever may be found due to your orators on account of the said 26,750 shares of stock, and a proportionate share of all dividends and profits and products, may be decreed

to your orators, together with costs; and that your orators shall have such other and further relief as the nature of their case may require, and to your honors shall seem meet."

To this bill the defendant company and C. E. Lyman demurred.

R. H. Summerlin, for complainants.

C. W. Ogden, for defendants.

Before PARDEE and MAXEY, JJ.

PARDEE, J. 1. Complainants sue on a resolution of the board of directors of the defendant company allotting to them individually, as charter members and incorporators, a number of shares of stock (to complainant Summerlin, 13,000; to complainant Lupton, 15,000) of the defendant company, which stock they allege has been wrongfully converted and issued to other parties. The company, C. E. Lyman, and George M. Wakefield are made parties defendant to the bill. The latter has not been served, nor has he entered an appearance. The defendant company and C. E. Lyman jointly and severally demur to the bill, assigning as the grounds therefor that on the face of the bill the court is without jurisdiction; that the bill is without equity; that there is a deficiency of necessary parties defendant, and a misjoinder of parties complainant. The bill shows that complainants and certain other persons, in the year 1885, agreed to organize a corporation for the purpose of operating mines and mining property; and that afterwards, on or about August 31, 1886, the complainants and five others formed and organized a corporate body under the laws of Colorado, known as the "Fronteriza Silver Mining & Milling Company," the present defendant; that subsequently, in September of the same year, the members of said corporation adopted a code of by-laws, (the act of incorporation and the code of by-laws being attached to the bill as exhibits,) and elected officers; that thereafter it was agreed at a regular meeting of said corporation (meaning, of course, the organizers aforesaid) that the capital stock should be allotted and divided, and it was allotted and divided, by a resolution of the board of directors, (presumably the organizers aforesaid,) among the different members of the corporation, reserving, however, about one-third of the shares for the purposes of the organization; that afterwards the corporation, through its officers and agents, (presumably the other members of the organization,) represented to complainants that certain investments in the silver mine would be made if investers were allowed representation on the board of directors, and thereupon complainants were requested to resign their positions as directors on a promise that their interests would not be jeopardized, but would remain the same, upon which terms and representations of the officers and agents of said corporation complainants did resign from the board of directors; that thereafter complainants were denied knowledge of the affairs of the corporation, and were excluded from the meetings, which were secretly held; and that, at a meeting held some time in October, 1887, without notice to the complainants, a re-election of officers was held, and a new distribution and reallotment of stock was made, in which the original allotment or distribution was disregarded,

set aside, and held for naught, and in which distribution complainants were allotted nothing; that all the shares of stock of the said corporation, including that which belonged to complainants, were issued and disposed of to other members of the corporation, and particularly to G. W. Angle, president, R. H. McCracken, superintendent, and C. W. Ogden, attorney, in violation of complainants' rights; that they at divers times had demanded their shares of stock, which, although the officers and agents were able to deliver, has been persistently refused by said officers and agents, who still refuse to deliver the same, but continue to hold, use, and enjoy the same; that the corporation, through its board of directors, has misappropriated and misapplied the shares of stock allotted to complainants by increasing the original allotment to other members of the corporation, and by making distribution to others who are non-stockholders in said corporation. The wrongs suffered by complainants, as set forth, seem to have been committed by the other promoters, incorporators, and charter members; and all advantages and benefits arising from such wrongs seem to have been secured by them. It is difficult to see how the company took any part, save as a victim, in the alleged wrongful acts. The company, as a company, is not alleged to have made any contract with complainants, and apparently has no interest in the *personnel* of the stockholders. The resolution of allotment, which is the basis of complainants' demand, was manifestly a collateral arrangement on the part of the incorporators, who controlled all of the stock of the corporation, as none had been issued in a regular way, and who were acting, apparently, regardless of the company's interests; and, whatever its binding effect upon the parties thereto, it is difficult to see how it is binding on the company. See *Joslin* v. *Stokes*, 38 N. J. Eq. 31; *Parsons* v. *Howard*, 2 Woods, 1. However this may be, it would seem that, if the company is bound to the complainants, in an action to enforce the agreement, and to recover the stock allotted, the parties who manipulated the company to complainants' injury, and who received and now hold the stock in controversy, should be made parties to the suit, or good reason given for not making them parties.

2. While the complainants' causes of action arise at the same time, and under the same resolution, it does not appear that the complainants have any community or privity of interest. Complainants are not stockholders of the defendant company. It is because they are not stockholders that this suit is brought. Each complainant is suing on his individual right, for the enforcement of a separate contract. The bill does not show any privity in the consideration. Each complainant's case stands on a different footing, and requires separate proof. The diligence of one cannot advantage the other. The failure of one could not in any way affect the other, except beneficially. The company's defenses may be different, requiring different proof. A release by one complainant would not defeat the other. Perhaps the cases are such, and bear such relation to each other, however, that under section 921 of the Revised Statutes they might be consolidated, conformably, to the usages of the court, for the purpose of avoiding unnecessary costs and delay; but in

such case it would seem that such action would be warranted only on motion of the defendant.

3. While the bill, on its face, appears to be for a specific performance of a contract for the delivery of stock, yet the bill shows that the defendant company has already issued the stock, has no stock to issue now, and, in short, that there can be no specific performance. The prayer for relief is made to cover such a state of facts, and is for the delivery of the shares of stock, and if that cannot be done,—and the bill alleges it cannot,—then for a decree for the value of the stock, and the dividends declared thereon. The case seems to be similar to the case of *Lacombe* v. *Forstall's Sons*, 123 U. S. 562, 8 Sup. Ct. Rep. 247, which was a suit to recover certain pledged bonds alleged to have been wrongfully disposed of, and wherein the court said:

"It is clear that the complainants, when they brought this action, knew very well that they could not have the relief asked for in the first part of their claim, because by their own indorsement of the bonds they had been transferred, under valid sales, to numerous persons, who either held them as innocent purchasers for value, or had parted with them to others, who held them in the same character. Their only efficient prayer for relief, therefore, was for a decree against the defendants for the value of the bonds, which they now insist must be estimated as of the time of the decree. The first objection to this relief is that it is simply what they could recover, if they could recover at all, in an action at law. It is the damages which, on their theory, are due for an unlawful conversion of the bonds. * * * We see no reason why a court of equity should be resorted to for this remedy; nor is there anything in the nature of the transaction, since no actual fraud on the part of Forstall's Sons is proved, why an action at law should not have been the appropriate one to recover these damages. The case is by no means a complex or difficult one. The facts are few, and easily proved. The transactions are open, and patent to everybody, and an action at law would afford complete and ample remedy for the wrong complained of."

In the present case, the bill seems drawn on the theory that there is a trust relation between the complainants and the defendant company, because they rendered services in the organization of the corporation, and the company agreed to give them shares, whereby the company not only became their trustee as stockholders, but in some way became their trustee for certain specific shares, which entitles them to an accounting by the company of the disposition, sale, dividends, and proceeds of said shares. It is sufficient to say to this that the complainants are not stockholders of the defendant company; that it is very doubtful whether any other trust relation exists between them and the company; that the contract calls for no certain shares, and such an accounting appears to be impracticable, if not absolutely impossible. Complainants' whole cause of action seems to be that the contract to give them shares was violated, and that they have been damaged thereby; and their right to recover, if they can recover at all, seems to be limited to a money decree, making a case where a complete remedy at law can be had, for the damages can be as well ascertained at law as in equity. See *Buzard* v. *Houston*, 119 U. S. 347, 7 Sup. Ct. Rep. 249, and the cases there cited.

There is nothing in the bill, save the statement making him a party, that affects in any way defendant Lyman. He is not alleged to have been a charter member, incorporator, promoter, nor to be a stockholder, nor to have participated in any way in doing the acts which are the basis of complainants' bill. No relief is asked against him. It is not easy to see why he was made a party.

The demurrer should be sustained, for that there is a misjoinder of complainants, a deficiency of necessary parties defendant, and the complainants have a complete and adequate remedy at law, and, as to defendant Lyman, because the bill makes no case whatever against him.

MAXEY, J., concurs.