## Thomas, Executrix, et al. v. Haly Coal Company, et al.

(Decided November 12, 1920.)

### Appeal from Perry Circuit Court.

1. Frauds, Statute of—Conveyance of Real Estate.—The assignment of an executory written contract for the conveyance of real estate is a transfer of an interest in land and under the statute of frauds must be in writing.

2. Contracts—Rescission—Abandonment.—When one of the parties to a contract unjustifiably refuses to perform his agreement as a whole or any substantial part of it the other party may at his option treat the contract as rescinded and abandon it altogether subject to the right of the parties to be placed in statu quo, and this doctrine applies to executory contracts for the sale of real property as well as to other contracts.

3. Contracts—Conveyance of Real Estate—Notice of Prior Contract. —Where a vendor or lessor, after executing a contract to convey, deeds the property to a purchaser for a valuable consideration with notice, actual or constructive, of the prior contract or without notice if there was no valuable consideration, such grantee takes and holds the land as a constructive trustee for the vendee or lessee in the first contract, and he may be compelled by the latter to specifically perform the original contract, since his title is encumbered with all of the burdens and obligations under which his vendor held it.

4. Contracts—Rescission.—If, however, the refusal of one of the parties to perform the contract is based upon facts which he in good faith believes to be true and which are sustained by substantial testimony and which arose out of a prior transaction between the parties, and which if true would constitute a defense in equity, such refusal will not give the right to the other party to treat the contract as rescinded.

5. Equity—Multiplicity of Suits.—A court of equity, having jurisdiction of the parties and the subject matter, to avoid circuity of actions, unnecessary delay and multiplicity of suits, will give complete relief to the parties, to which they are entitled as shown by the facts in the case.

T. E. MOORE, JR., for appellants.

P. T. WHEELER, WOOTON & MORGAN and W. O. DAVIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on both the appeal and the cross appeal.

On February 21, 1913, Delilah and Cynthia Napier in consideration of $1,070.60, $300.00 of which was paid at the time, executed, acknowledged and delivered their agreement to convey to R. L. Thomas all the mineral in and to a one-fourth undivided interest in a tract of land in Perry county containing 428.24 acres. T. E. Moore, Jr., was the agent of Thomas and represented him in procuring the contract which was recorded in the Perry county clerk's office on the day it was executed. Under the terms of the contract (to which we shall hereafter refer as the Napier contract) the deed to the minerals agreed to be conveyed was to be executed and the balance of the purchase money paid as soon as the Napiers furnished an accurate survey of the property and a complete abstract of their title showing it to be perfect. Two of the undivided fourth interest in and to the minerals under the entire tract had been purchased a short while before by the appellant and defendant below, Haly Coal Company, through its agent, J. B. Hoge, and he had been negotiating and had practically agreed upon terms for the purchase of the fourth interest of Delilah and Cynthia Napier which they agreed to convey in their contract with Thomas, but Hoge had not procured for his principal an enforcible contract from the Napiers. Shortly after the Napier contract was recorded, Hoge informed Moore, the two being friends, that his principal had instructed him to procure a deed from the Napiers, which he had neglected, and that he would be not only criticized but perhaps lose his position on account of such failure unless Thomas would agree to transfer to the Haly Coal Company the Napier contract. To favor Hoge, Moore, as the agent of Thomas, agreed to do so in consideration of the payment of $310.00 to Thomas (being the amount paid the Napiers and expenses in procuring their contract) provided Thomas did not object. On April 28 following the date of the execution of the contract Hoge, Moore and Thomas met in Lexington and the latter orally but conditionally as the court found agreed to transfer to the Haly Coal Company, the Napier contract, pursuant to the terms recommended by Moore, and Hoge drew a draft payable at the Paintsville National Bank, Paintsville, Kentucky, the drawee being George F. Copeland, who was

secretary of the company. The draft was deposited by Thomas in a bank at Lexington, who sent it to the Paintsville bank for collection, but it was returned unpaid and the Lexington bank delivered it to Thomas, who kept it and made no further effort to collect it. Immediately after delivering the $310.00 draft to Thomas, Hoge returned to Perry county and procured an absolute deed from the Napiers to the Haly Coal Company for the minerals covered by their contract with Thomas and paid them at the time the balance of the purchase money due by Thomas. Thomas has since died leaving a will making his wife, the appellant and plaintiff below, Irma Trent Thomas, as sole devisee and executrix of his will. Neither he before his death nor his agent Moore learned of the deed from the Napiers to the Haly Coal Company, according to the testimony for plaintiff, until something near a year after its execution. There is a dispute in the testimony as to whether Thomas at the time of the delivery to him of the $310.00 draft agreed *absolutely* to transfer to the Haly Coal Company the Napier contract, or whether he agreed to do so *when the draft was paid*. But whatever may be the facts concerning this matter his agreement was verbal only and the assignment not being in writing and subscribed by him is not enforcible, since it is an agreement to convey an interest in land which under the statute of frauds must be in writing and which requirement applies to an assignment or transfer of an executory contract for the purchase of an interest in land. Coldwell v. Davidson, 187 Ky. 490, and 20 Cyc. pages 218-219. Proceeding upon the theory that the Haly Coal Company had broken its agreement by failing to pay the $310.00 draft and perhaps realizing that the agreement to assign the Napier contract to that company being verbal and not enforcible, Thomas on the 11th day of May, 1914, entered into a written contract with R. D. Baker agreeing to convey to the latter as soon as titles could be perfected the mineral under a number of tracts of land, including that covered by the Napier contract. In that contract Baker agreed to pay $23.00 per acre for the mineral in all of the included tracts upon the execution to him by Thomas of proper deeds, the titles to some of which (including the Napier tract) the latter had not procured. Baker assigned and transferred that contract to D. D. Hull, Jr., and he on May 10, 1917, twenty-two days after the filing of this suit, assign-

ed and transferred it to the appellee and defendant below, Kentucky River Coal Corporation, to whom the Haly Coal Company had in the meantime conveyed the title it held to the minerals covered by the Napier contract.

This suit was filed on the 10th day of April, 1917, by Irma Trent Thomas, widow and sole devisee of R. L. Thomas, against the two corporations, Haly Coal Company and Kentucky River Coal Corporation, seeking a specific performance of the Napier contract upon the ground that it vested in Thomas the equitable and beneficial title to the mineral involved, leaving the Napiers holding only the legal title as trustees for him, and that the two defendant corporations took the legal title from the Napiers encumbered with the trust and burdened with the duty to convey it to the equitable title holder on performance by him of the obligations which he assumed in the Napier contract. A demurrer to the petition was overruled and defendants filed their joint answer in which they relied on the transaction in which the $310.00 draft was issued and the subsequent obtention of the deed from the Napiers pursuant thereto, and pleaded other facts which they claim constitute laches on the part of plaintiff and her testator and which estopped plaintiff from maintaining the action. They denied that Thomas had any equity in the minerals involved or that either of them took their deeds subject to any such alleged equity. Afterwards an amendment was filed in which the assignment of the Baker contract to Hull and by him to defendant, Kentucky River Coal Corporation, was pleaded. The reply filed to the amended answer admitted the execution of the Baker contract and that it had by mesne conveyances been duly assigned and transferred to the Kentucky River Coal Corporation; but it was averred in avoidance thereof that the latter company had failed, declined and refused to perform it although frequently requested and demanded to do so, and that such failure and refusal on its part entitled plaintiff and her testator to treat that contract as rescinded, which had been done, and which restored the parties to their original status as if that contract had never been executed. Appropriate pleadings made the issues and upon final submission the court in its judgment denied the plaintiff the relief of specific performance but rendered in her favor a judgment against defendants for $2,462.38, being the price agreed to be

paid in the Baker contract for the minerals included in the Napier contract, less $770.60, the balance due from Thomas to the Napiers, which sum the defendants paid when they procured their deed pursuant to, as they claim, the arrangement with Thomas when the $310.00 draft was delivered. Complaining of that judgment plaintiff prosecutes this appeal and defendants have prayed and been granted in this court a cross appeal.

We have concluded to first dispose of the questions raised by the cross appeal. It is insisted by appellees that there was a defect of parties defendant and for that reason the petition should have been dismissed, but this question was not raised either by special demurrer or other appropriate pleading or motion, and for that reason alone we would be fully justified in considering it no further, but, waiving the question of practice, we are unable to agree with defendants' counsel upon the merits of their contention for we find the law to be well settled that a purchaser from a vendor who has previously sold by executory contract, takes and holds his title as a constructive trustee for the vendee in the prior executory contract, provided that such purchaser, though for a valuable consideration, had notice of such prior equity, and as such constructive trustee he assumes all the obligations of his vendor and may be compelled by an appropriate proceeding to perform the latter's original contract. This doctrine is thus stated in the text of 36 Cyc., page 761: "Where the vendor or lessor, after the contract, conveys the land to a purchaser who takes with notice of the contract, actual or constructive, or who does not part with a valuable consideration for his purchase, such grantee takes and holds the land as a constructive trustee for the vendee or lessee, and may be compelled at his suit to perform the original contract by conveying or leasing the land to the vendee or lessee. The same rule may apply to other contracts than those for the sale or lease of land. Of course, in order that the rule may apply, the contract must be of such a character that the court can specifically enforce it." The note to the text cites cases from the highest courts in twenty-seven states of the union, some cases in the inferior federal courts and a number of English cases. Mr. Pomeroy, in his valuable work on equity jurisprudence, 3rd edition, vol. 2, section 732, supporting the text in Cyc., says: "One who acquires the subsequent estate or interest with notice of the earlier equity in

favor of another person will hold his acquisition subject and subordinate to such outstanding interest or right. In the contest for priority between the two claimants he must be postponed. He takes his interest burdened with the obligation of recognizing, providing for and carrying out the previous equity according to its nature . . . when once established are followed by the same consequences upon the rights of the subsequent holder or purchaser.'' This doctrine also finds support in the two opinions of this court in the cases of Lee v. Durrett, 4 Bibb 20, and Ligget v. Wall, 2 A. K. Mar. 149. At the time each of the defendants obtained title to the mineral in the Napier land in litigation they were fully apprised of plaintiffs' equity therein, and this fact brings the case completely within the doctrine discussed. It is therefore our conclusion that this objection to the judgment is without merit.

Defendants in support of their cross appeal also insist that under the principles announced in the case of Wells v. Derrickson, 184 Ky. 384, plaintiff is estopped to rely upon the failure of her testator to transfer the Napier contract in writing to the Haly Coal Company. It may be true, under the doctrine in that case, that if Thomas had *directed* Hoge to procure the deed from the Napiers and pursuant thereto it was so procured an estoppel would be created; but, whether so or not, the court found as a fact (which finding is supported by sufficient evidence) that no such direction was given by Thomas to Hoge. On the contrary, the judgment necessarily found the fact to be that Thomas only *agreed* or *consented* to transfer the Napier contract *on condition* that the draft for $310.00 was paid. It is also insisted that the doctrine of laches should operate to estop plaintiff from maintaining her suit, but we find none of the elements of that doctrine in this case. No intervening equity has arisen. The original parties are the same except the defendant, Kentucky River Coal Corporation, who purchased with full knowledge of all the facts, and we do not find that defendants' contention, that it expended a large amount of money in reliance on the transfer of the Napier contract, to be sustained by the evidence. It results therefore that there exists no ground for disturbing the judgment on the cross appeal.

This leaves for consideration the points urged by appellants' counsel as grounds for reversing the judgment on the original appeal. They are (1) that plain-

tiff was entitled to a judgment against defendants directing them to convey the mineral under the Napier contract to her in obedience to the contract which her testator obtained from its owners, and (2) that the court erred in rendering judgment in her favor for the amount due under the Baker contract.

From what has been said it is manifest that ground (1) should be sustained but for the existence of the Baker contract. Counsel seeks, however, to relieve his client of the obligations of that contract because defendants on request declined to perform it, thereby giving her the right, as he insists, to abandon it, and that she did so when defendants refused to perform it upon demand made before filing this suit. The principle of law contended for is undoubtedly a correct one as is shown by the following: 6 R. C. L. pages 925-927; 13 C. J. 609-621, 24 A. and E. Ency. Law, 2nd edition, 643 and 671; Black on Rescission and Cancellation, vol. 1, sections 196 and 202; Warvelle on Vendors, vol. 2, section 844; Lakeshore and Michigan Southern Ry. Co. v. Richards, 30 L. R. A. 33, and annotations, and Newton v. Bayless Fruit Co., 155 Ky. 440. An examination of these authorities will show that there are many exceptions to the general doctrine which are too lengthy and too numerous to incorporate in this opinion. They are, however, based upon the principle that if it would be inequitable and work a manifest injustice to uphold the rescission it will not be done. The refusal to perform must be "unjustifiable," say the authorities, to have such effect. In this case defendants relied on two defenses to defeat specific performance of the Napier contract; one was, (a) the rights which they obtained under the transaction with reference to transferring that contract had with R. L. Thomas at the time of the delivery of the $310.00 draft, and the other was, (b) that one of them had become the owner of the Baker contract and, in effect, they insisted that if they should be unsuccessful in their defense (a), then in no event was plaintiff entitled to specific performance of the Napier contract after the execution of the Baker contract, since the only relief which the court could grant her was a judgment for the amount due under the latter contract. Defendants appear to have *bona fide* relied on defense (a) and likewise to have believed in good faith that the defense therein urged was a substantial one, and this reliance is not without justifiable color to support it. If defend-

ants' testimony had been sufficient to convince the court that plaintiffs' decedent *unconditionally* consented for Hoge to procure the legal title from the Napiers, as he insists is the fact, then in that event, as we have seen under the doctrine of the Wells case, *supra,* the failure to comply with the statute of frauds by transferring the Napier contract in writing would have been eliminated through the operation of an estoppel. When defendants refused to perform the Baker contract, after one of them obtained it, they did so upon the ground that they already had a deed to the minerals in question which they (not without justifiable grounds) insisted was obtained with the assent and under the directions of plaintiff's decedent, and it was only upon this ground that the refusal was predicated. If they should be denied the fruits of the Baker contract, the benefits of which they now own, because of such refusal, it would be in the nature of a penalty visited upon them by a court of equity because they made their election to rely on both defenses at their peril. We do not think under such circumstances a court of equity will visit upon them the consequences insisted upon, the result of which would be to penalize them for relying on all their possible and apparently well founded defenses. They undoubtedly had the right to rely on all such existing defenses without incurring the risk of losing some of them if they misjudged the merits of others. Hence, their refusal to perform the Baker contract after its assignment by Hull was made under circumstances and for reasons that justified them in doing so at the time.

However, defendants were not the owners by assignment or otherwise of the Baker contract at the time of the filing of this suit. None of the verbal demands for performance testified to in the record, made before Hull assigned that contract can avail plaintiffs in this case, for the manifest reason that no one can be required to perform a contract to which he is not a party by assignment or otherwise. And if a demand could be legally made after the filing of the suit and before judgment defendants then had, as we have shown, the right to decline without incurring the risk of losing all the benefits of that contract.

The next point argued by plaintiffs is that the court erred in rendering a judgment in her favor when she did not ask it. Her pleadings pray "for all proper and equitable relief," and this being a case in equity and the

court having jurisdiction of the parties as well as the property involved was authorized to render such judgment as the facts justified.  In other words, to avoid circuity of actions, multiplicity of suits, and needless delay, the court had the right and it was its duty to adjust the rights of the parties between themselves and to the property involved as they were made to appear from the facts proven, which we think it did in this case. Harris v. New, 167 Ky. 262; Harris v. Smith, 2 Dana. 10, and Sanders and Walker v. Herndon, 128 Ky. 437. Illustrating our position, if we were to reverse the judgment, a direction to dismiss the petition would be made following the principles of this opinion.  The plaintiff would then have open to her but two courses; one to waive the insufficiency of the assignment of the Napier contract and sue to recover on the draft for $310.00, and the other to proceed to enforce the Baker contract.  The latter alternative is the more profitable and it is reasonable to presume would be adopted.  The court has given her that relief and she is in no position to complain.

Wherefore the judgment on both the original and cross appeal is affirmed.