ALLEY, Respondent, v. PEESO, Appellant.

(No. 6,592.)

(Submitted March 5, 1930. Decided April 11, 1930. Opinion on Motion for Rehearing Filed June 30, 1930.)

[290 Pac. 238.]

(1)

*Messrs. Rockwood & Rockwood* and *Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. M. N. Whitlock* argued the cause orally.

*Mr. B. F. Maiden* and *Messrs. Logan & Child,* for Respondent, submitted a brief; *Mr. S. M. Logan* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action, by agreement, was tried to the court without a jury. The court adjudged that each party take nothing by the action, and that defendant recover from plaintiff his costs. From the judgment, defendant appealed.

The complaint consists of two causes of action, the first for money loaned, and the second for the purchase price of 4,500 shares of stock of the Zonolite Company, a Montana corporation, alleged to have been sold by plaintiff to defendant.

The answer of the defendant consists of (1) a general denial, (2) a cross-complaint in which it is alleged that on or about January 1, 1922, plaintiff owned certain mining claims in Lincoln county, containing a mineral called "zonolite," and, for the purpose of raising money with which to form a corporation and prosecute development work, made an offer to defendant that if defendant would sell, or if through his influence a sale could be consummated of a one-fourth interest in the corporation for at least $6,000, plaintiff would transfer to defendant a one-fourth interest in the corporation; that between January 1 and July 1, 1922, through the influence and efforts of defendant, a sale was consummated of a one-fourth interest in the proposed corporation for a sum exceeding $6,000, with the intention of accepting plaintiff's offer; that plaintiff received the proceeds of the sale and organized the corporation with a capital stock of 250,000 shares, 30,000 of which were preferred and the remainder common; the name of the corporation was first "Mineral Cork Company," but later was changed to "The Zonolite Company"; that plaintiff has failed and refused to transfer to defendant a one-fourth interest in the corporation, but has transferred to him 9,000 shares in partial compliance with the agreement; that there are still 46,000 shares due to defendant, and that plaintiff is the owner of at least 46,000 shares; that the value of the stock is problematical; that the stock has no market value, and it would be impossible to compute damages for breach of the contract. It asks that plaintiff be required to transfer to defendant 46,000 shares of the common stock, with the usual request for other and further equitable relief.

The reply contains a general denial, together with three affirmative defenses to the cross-complaint. The first has, in effect, been abandoned and requires no consideration here. The second alleges that an agreement was made between plaintiff and defendant but that its terms were these: That if defendant would contribute his services to the development of the mining property until it was a going concern, and would effect a sale of a one-fourth interest in the mining venture,

he should receive as his commission a one-eighth interest, provided he should also pay to plaintiff $3,000; that pursuant to the agreement defendant procured purchasers for the one-fourth interest at the agreed price of $10,000; that defendant, had he performed his agreement, would have been entitled to 27,500 shares, less 1,375 representing defendant's proportion of a block of 11,000 shares sold to A. N. Cross by mutual consent; but it is alleged that defendant failed to comply with his part of the contract, by failing and neglecting to continue development work at the mines excepting for about one year, and by failing to pay $3,000; that of the 9,000 shares of stock issued to defendant 4,500 were issued as an accommodation only, with the view of assisting defendant to continue his services in the mining venture, and the other 4,500 shares represent those referred to in the second cause of action, which were sold to defendant. The third affirmative plea to the cross-complaint reaffirms the making of the contract containing the terms and conditions, and its breach by defendant, as set forth in the second affirmative defense to the cross-complaint; that defendant has converted to his own use the 9,000 shares of stock referred to. Judgment is asked as demanded in the complaint, or, in lieu thereof, a decree directing defendant to deliver to plaintiff 9,000 shares of the stock of the Zonolite Company, and decreeing that the contract between plaintiff and defendant be canceled.

The evidence on the material issues was conflicting. The court found that the money referred to in plaintiff's first cause of action was paid to defendant for labor and services performed; that defendant never agreed to pay plaintiff any sum of money for any shares of stock, and that plaintiff was not entitled to recover under either cause of action set out in the complaint; that the contract as alleged by defendant had been made and performed by defendant; that plaintiff, pursuant to the contract, transferred to defendant 12,666 shares of stock in the corporation and refuses to further comply with the contract; that a one-fourth interest in the corporation is 55,000 shares; that the shares of stock have no ascertainable value;

that the amount of damages resulting to defendant by the breach of the contract by plaintiff cannot be determined from the evidence; that, at the time the cross-complaint was filed, plaintiff was a stockholder in the Zonolite Company to the extent of more than 46,000 shares, and prior to the trial had disposed of all but 5,000 shares; that defendant is not entitled to specific performance of the contract.

The evidence fully sustains the court's findings of fact. The question for determination is whether the court's conclusions drawn therefrom are correct, and whether the court should have granted defendant affirmative relief.

Defendant, appellant here, contends that the court should have granted specific performance in so far as the plaintiff was able to perform, and should have awarded compensation for the deficiency.

Plaintiff asserts that the judgment was proper because the cross-complaint is lacking in substance and, consequently, does not justify specific performance.

In paragraph 9 of the cross-complaint defendant alleged "that the value of the stock in said corporation is problematical, and that the stock thereof has no market value at the present time, although it may develop to have great commercial value, the mineral is new and a market has to be made for it and purchasers found, and that it would be impossible to compute damages for failure to comply with said agreement in not transferring said shares of stock."

Plaintiff did not demur to the cross-complaint, nor did he object to the introduction of evidence thereunder upon the ground of its alleged insufficiency. Defendant tried the case in the court below consistently with paragraph 9, supra; that is, upon the theory that he is entitled to the stock, and that alone. This policy was pursued without deviation throughout the trial, and reiterated in the request for findings and conclusions of law. The trial court was not asked at any time to award defendant damages for the value of the stock if delivery thereof be not had; that request appears for the first time in defendant's brief in this court.

The general rule is that a court of equity will not order the specific performance of a contract for the sale of personal property because, ordinarily, there is an adequate remedy at law, but if from the nature of the case an adequate remedy at law does not exist, and the plaintiff is in need of specific relief, equity will assume jurisdiction. (25 R. C. L. 293, 294.) Mr. Fletcher says: "The general rule that specific performance will not lie to enforce an executory agreement for the sale of personal property, unless, by reason of exceptional circumstances, the remedy by an action at law for damages for breach of the contract would not afford adequate relief, applies to sales of corporate stock. Specific performance of such a contract will not be decreed, therefore, where the remedy by an action for damages is in fact adequate, as when the stock has a market or easily ascertainable value, and can be readily purchased, and there is no reason why the purchaser should have the particular shares contracted for. But it is otherwise if for any reason the remedy at law is inadequate, and a judgment for damages would not place the injured party in as good a position as a decree for specific performance. Under such circumstances an action for specific performance will lie." (Cyclopedia Corporations, sec. 3899; and see Cook on Stock & Stockholders, sec. 337.)

"If stock has a recognized market value, courts will ordinarily leave the parties to their action at law for damages for breach of the agreement to sell, but in cases where the stock has no recognized market value, is not purchasable in the market, or has a value which is not settled, but is contingent upon the future workings of the corporation, equity will sometimes decree specific performance of a contract of purchase." (*Hyer* v. *Richmond Traction Co.*, 168 U. S. 471, 42 L. Ed. 547, 18 Sup. Ct. Rep. 114, 119. In accord are *Hills* v. *McMunn*, 232 Ill. 488, 83 N. E. 963; *Smurr* v. *Kamen*, 301 Ill. 179, 22 A. L. R. 1023, and note, 133 N. E. 715; *Wait* v. *Kern River M., M. & D. Co.*, 157 Cal. 16, 106 Pac. 98, 101; *Frue* v. *Houghton*, 6 Colo. 318; *Turley* v. *Thomas*, 31 Nev. 181, 135 Am. St. Rep. 667, 101 Pac. 568.)

"Inadequacy of legal remedy is the basis for equity jurisdiction to enforce performance." (*Morgan* v. *Bartlett,* 75 W. Va. 293, L. R. A. 1915D, 300, 83 S. E. 1001, 1003.)

"If the property is of such a nature that the value of the performance cannot be estimated in money with any degree of certainty and taken in lieu of it, the inadequacy of the legal remedy is apparent. (*Senter* v. *Davis,* [38 Cal. 450], supra.)" (*Wait* v. *Kern River M., M. & D. Co.,* supra.)

Under section 8714, Revised Codes 1921, specific performance of an obligation may be compelled "when it would be extremely difficult to ascertain the actual damage caused by the nonperformance of the act to be done." The facts bring defendant's case clearly within the purview of the foregoing authorities, and this statute. The evidence shows the stock did not have any market value, and that its actual value is difficult or impossible of ascertainment—it "has no ascertainable value," as the court found. Therefore, it would be extremely difficult to ascertain the actual damage caused by plaintiff's breach of the contract.

Conceding, but not admitting, that, under the circumstances of this case, before maintaining his cross-complaint it was necessary for defendant to prove that he could not have purchased the stock upon the market, the evidence indicates clearly that he could not have done so. Every legitimate inference from the evidence indicates that there was no Zonolite stock on the market. Nor does it appear that he could have got it elsewhere unless he bought the stock which he had sold, which was the basis of his just claim against plaintiff. Clearly, too, the value of the stock was and is contingent upon the future workings of the corporation. Defendant's contract was that he was to get one-fourth of the stock. That was his agreed compensation. He is entitled to it, entitled to profit by its rise in value should the enterprise prove profitable. As the stock is of an uncertain, unascertainable value, it cannot be said that, prefacing that he had the financial ability to and could purchase it in the market, thereafter succeeding in a suit

against plaintiff for the price paid, the defendant would win the equivalent of compensation the contract calls for.

Upon the evidence, admitted without objection, legal remedies available to defendant were wholly inadequate, and the equitable powers of the court afford plaintiff the only avenue of relief. For these reasons we are not disposed to hold that, as contended by plaintiff's counsel, the cross-complaint is insufficient because it does not contain the allegation that defendant was unable to procure the stock in the market.

At this time, after a trial upon the merits, the evidence having disclosed the futility of the point made, we are not disposed to analyze the complaint too minutely. Objection to it comes for the first time in this court after trial upon the merits. In such case every reasonable deduction will be drawn from the allegations of the complaint, and its whole intendment will be sought, to uphold it. (*Gilna* v. *Barker*, 78 Mont. 357, 254 Pac. 174.) Furthermore, the modern tendency, with which our statute is consistent, is towards a more liberal rule than formerly obtained in cases of this character. (*Wait* v. *Kern River M., M. & D. Co.*, supra; *Turley* v. *Thomas*, supra; *Krohn* v. *Williamson*, (C. C.) 62 Fed. 869; Id., 66 Fed. 655, 13 C. C. A. 668; *Northern Trust Co.* v. *Markell*, 61 Minn. 271, 63 N. W. 735.)

It is contended by plaintiff that the contract, as originally made, related to the sale of an interest in real estate for a commission, and that it was and is invalid under section 7519, Revised Codes 1921, because not in writing. The evidence, as the court found, was sufficient to sustain the allegation that defendant was to have a one-fourth interest in the corporation for selling a one-fourth interest, and that the interests were to be represented by shares of stock. Furthermore, there was no objection raised, either in the pleadings or to the introduction of evidence, that the contract, to be enforceable, must be in writing, and under such circumstances the objection that the contract is invalid under the statute of frauds is waived. (*Gilman* v. *McDaniels*, 177 Iowa, 76, 158 N. W. 459; *Harn* v. *Patterson*, 58 Okl. 694, 160 Pac. 924;

*De Proy* v. *Progakis,* (Tex. Civ. App.) 259 S. W. 620; *Davison* v. *Nicholson,* 37 Wyo. 412, 263 Pac. 605; *International Harvester Co.* v. *Campbell,* 43 Tex. Civ. App. 421, 96 S. W. 93; *Pike* v. *Pike,* 69 Vt. 535, 38 Atl. 265.)

The remaining question for determination is whether specific performance may be decreed where the court has found that the vendor has previously disposed of a part of the property. Plaintiff had disposed of all of his stock before the trial except 5,000 shares which he then held. Roy S. Alley, to whom plaintiff conveyed the stock, was made a party to the action, but later the action as to him, for reasons not appearing of record, was dismissed.

If the vendor has disposed of all of the stock before trial, specific performance will not be decreed unless the person to whom the stock was transferred was made a party to the action. (*Summerlin* v. *Fronteriza Silver M. & M. Co.,* (C. C.) 41 Fed. 249; *Lamb* v. *General Film Co.,* 130 La. 1026, 58 South 867.)

Defendant, anticipating such a move on part of plaintiff, prayed for an injunction restraining plaintiff from disposing of his stock pending trial, but took no steps to have the injunction issued.

Should the court have ordered specific performance as to the shares still owned by plaintiff? We think so. Under the well-known rule, equity, having taken jurisdiction, accords the suitor all necessary relief to which the pleadings and proof entitled him. (*Stevens* v. *Equity Mutual Fire Ins. Co.,* 66 Mont. 461, 213 Pac. 1110.) While through plaintiff's action the court is deprived of power to enter a decree for all the stock to which defendant is entitled, it still has jurisdiction over plaintiff with respect to that which he has retained. Any other course would compel the conclusion that if a court of equity cannot afford full relief it cannot afford any at all. Specific performance must be decreed, therefore, as to the 5,000 shares. But under the pleadings and proof, further the court cannot go. While a court of equity having jurisdiction for one purpose may go forward and give relief

as to all matters comprehended in the pleadings, it is limited in the relief it may grant to the allegations of the pleadings and cannot go beyond their scope. (10 R. C. L. 374.)

The cross-complaint discloses only an action in equity; it is based upon the theory that a cause of action at law is inadequate and would prove unavailing. Upon this basis alone the cross-complaint states a cause of action, as we have shown earlier in the opinion. The court cannot now go forward and afford the defendant compensation in the nature of legal relief; sometimes that may be done, but, under the pleadings, facts and circumstances shown, it cannot be done in this action. Defendant must stand or fall upon the case he has made.

Upon motion for rehearing the opinion heretofore promulgated is withdrawn, and this one substituted in lieu thereof. The motion for rehearing is denied. The cause is remanded to the district court of Lincoln county, with instructions to enter judgment for defendant ordering specific performance of the contract to the extent of the 5,000 shares of stock held and controlled by plaintiff at the time of the trial. Defendant shall recover his costs upon the appeal. Remittitur forthwith.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, Dissenting: I agree with all that is said in the foregoing opinion, except in so far as it limits defendant's recovery to 5,000 shares of stock.

Plaintiff testified: "I have between five and six thousand shares." He also said that he had transferred 123,500 shares to his brother in November, 1927, retaining in himself a proxy to vote the stock. He expected to get some of that back after reaching a settlement of business matters with his brother. When asked as to how much he expected to have returned to him, he said: "I probably will get 15,000 shares, maybe more or less." He was asked: "You estimate when you get the settlement with Roy Alley you will own about 22,000 shares?" His answer was: "Probably." This evidence is not contradicted. To me there seems no logical

reason for limiting recovery to 5,000 shares of stock, and for denying the right to recover compensation in lieu of the remaining shares of stock covered by the contract.

Under section 28, Article VIII of our Constitution it is provided: "There shall be but one form of civil action, and law and equity may be administered in the same action." Of like import is section 9008, Revised Codes 1921.

"It appears to be well settled that where a court of equity obtains jurisdiction for the purpose of granting some distinctively equitable relief, such as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed at the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible,— of damages,—the court may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages (1 Pom. Eq. Jur., sec. 237); especially since, by the Code, the distinction between courts of law and courts of equity has been abolished." (*Cole* v. *Getzinger*, 96 Wis. 559, 71 N. W. 75, 81.) This rule has even been extended to cases where plaintiff, in a suit for specific performance, knew the facts rendering such relief impossible at the time the action was commenced. (*McLennan* v. *Church*, 163 Wis. 411, 158 N. W. 73.) But here the record shows, and the court found, that when the cross-complaint was filed plaintiff was able fully to comply with a decree for specific performance, and the court expressly found that the cross-complaint was brought in good faith.

"It is settled, with little or no conflict of authority, that when a defendant in a bill in equity disenables himself, pending the suit, to comply with an order for specific relief, the court will proceed to afford relief by way of compelling compensation to be made; and for this purpose will retain the bill, and determine the amount of such compensation, although its

nature and measure are precisely the same as the party would otherwise recover as damages in an action at law. * * * There is equal ground in equity for applying the same rule, with the same qualifications, to all cases where a defect of title, right or capacity in the defendant to fulfill his contract is developed by his answer, or in the course of the hearing, or upon reference of his title or capacity, after an order of fulfilment. * * * Relief might then be given by a decree in the alternative, awarding damages unless the defendant should secure the specific performance sought. In many cases, this would be an effective and proper course; inasmuch as the defendant, although not having himself, at the time, the title or capacity requisite for such performance, might be able to procure it otherwise. * * * The peculiar province of a court of chancery is, to adapt its remedies to the circumstances of each case as developed by the trial. It is acting within that province when it administers a remedy in damages merely, in favor of a plaintiff who fails of other equitable relief, to which he is entitled, without fault on his own part." (*Milkman* v. *Ordway*, 106 Mass. 232.) To the same effect is *Wonson* v. *Fenno*, 129 Mass. 405.

A person by his own voluntary act in rendering specific performance of a contract impossible does not divest a court of equity of jurisdiction to decree specific performance so far as possible and to render a money judgment for the deficiency. (*Hansen* v. *Hevener*, 69 Cal. App. 337, 231 Pac. 361; *C. & O. Ry. Co.* v. *City of Dayton*, 177 Ky. 502, 197 S. W. 969; *Tri-State Terminal Co.* v. *Wheat Growers' Assn.*, 134 Wash. 519, 236 Pac. 75; *Saperstein* v. *Bank*, 228 N. Y. 257, 126 N. E. 708; *McFarlane* v. *Dixon*, 176 Wis. 652, 48 A. L. R. 1, 187 N. W. 671; *Altoona etc. Supply Co.* v. *Kittanning etc. Ry. Co.*, (C. C.) 126 Fed. 559; 36 Cyc. 748.)

Neither was it incumbent upon defendant, under the circumstances, to specifically pray for such relief in his cross-complaint. Defendant asked for general equitable relief. Under a prayer for general relief in equity the court may grant relief differing from the specific relief prayed for, and

may decree a money judgment. (*Marston* v. *Catterin,* 290 Mo. 185, 234 S. W. 816; *Waite* v. *O'Neil,* 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550; *Thomas* v. *Haly Coal Co.,* 189 Ky. 698, 225 S. W. 1053; *Fike* v. *Fike,* 3 N. J. Misc. Rep. 485, 128 Atl. 849.)

"A prayer for general relief is as broad as the equitable powers of the court. Under it the court will shape its decree according to the equities of the case, and broadly speaking will grant any relief warranted by the allegations of the bill, whether it is the prayer in the bill or whether there is a special prayer for particular and different relief; and defects in the special prayer are usually cured by a general prayer. If the facts alleged are broad enough to warrant relief, it matters not how narrow the specific prayer may be if the bill contains a prayer for general relief. The prayer for general relief serves to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature. It may also serve as a substitute for the prayer for special relief, and authorize relief of a different nature when that specially prayed is denied, even to the extent of substituting a money decree in lieu of the relief specifically prayed." (21 C. J., p. 679 et seq.)

As stated by Waterman in section 500 on the Specific Performance of Contracts: "When compensation is sought by the vendee, although it is better for him to state his grounds therefor in his pleading, yet he is not obliged to do so, but may obtain 'compensation' at any time during the investigation before performance, though the prayer of his bill and the decree rendered at the hearing do not allude to compensation."

In *Cushman* v. *Bonfield,* 139 Ill. 219, 28 N. E. 937, 945, the court said: "The point is also made that the decree is not warranted by the prayer of the bill. It is true, there is no specific prayer for a money decree, the relief specifically prayed for being what would be substantially a specific enforcement of the plan of reorganization embodied in the agreement, to which nearly all the bondholders subscribed, by issuing to the

complainant first mortgage bonds of the company to which the railroad property was transferred in exchange for those already held by him. The bill, however, contains the general prayer for relief; and under that prayer, as the rule seems to be well settled in this state, the decree rendered was proper.''

In speaking of the same question, the court, in *Superior Oil & Gas Co.* v. *Mehlin,* 25 Okl. 809, 138 Am. St. Rep. 942, 108 Pac. 545, 549, said: ''Notwithstanding the fact, however, that we are unable to grant to plaintiff the primary relief for which it prays, there is no fraud shown, and there are manifest equities in its behalf which we cannot pass without noticing. Plaintiff has paid defendant money in an effort on its part to carry out the terms of the contract as it assumed them to be, and defendant has received and retained this money, and apparently has made no offer of return. In addition thereto plaintiff, with the consent of defendant, entered upon his allotment, and erected a house on the same for a residence or office building, the exact cost of the same being uncertain. Plaintiff's petition contains a prayer for general relief, and in such cases the trend of authorities is that, where the equitable relief specifically prayed for cannot be given, the plaintiff's action will not be dismissed, but in some proper manner he will be given an opportunity to obtain relief to the extent to which he is shown a right. (16 Ency. Pl. & Pr., p. 801; *Seibert et al.* v. *Thompson et al.,* 8 Kan. 65; *Martin et al.* v. *Martin,* 44 Kan. 295, 24 Pac. 418.)''

Where, as here, the statute of limitations has run against the remedy for breach of the contract sought to be enforced, and in consequence defendant has no remedy at law, there is additional reason why a court of equity should retain jurisdiction over the cause, rightly invoked at the time of the filing of the cross-complaint, and do complete justice between the parties. (*Combs* v. *Scott,* 76 Wis. 662, 45 N. W. 532.)

The majority opinion assumes that, if the court should decree compensation for the deficiency, it would to that extent work a transformation of the action from one in equity to one at law. This assumption, in my opinion, is erroneous.

A decree for compensation for deficiency in a suit for specific performance is recognized by the authorities as a proper function of a court of equity while sitting as such. And the fact that the measure of compensation, in lieu of specific performance, cannot be exact or certain is no obstacle to the granting of such relief. (Pomeroy on Specific Performance of Contracts, 3d ed., sec. 448.)

Since it does not appear that plaintiff will be unable to comply fully with a decree for specific performance of the contract, it is my opinion that specific performance should have been granted to the extent of 42,334 shares. Were that done, and should it be made to appear thereafter that full performance could not be had, upon appropriate supplementary proceedings the court could then determine the compensation to be awarded in lieu of whatever stock plaintiff would not be able to surrender. (See 21 C. J. 544; *Bartee* v. *Matthews*, 212 Ala. 667, 103 South. 874.)