WHEELER, APPELLANT, *v.* JAMES, RESPONDENT.

(No. 5,353.)

(Submitted February 7, 1924.  Decided February 28, 1924.)

[223 Pac. 900.]

*Contracts — Interpretation — Building Material — Custom and Usage—Parol Testimony—Inadmissibility.*

Contracts in Writing—Oral Understanding—Parol Testimony—Inadmissibility.
1.  In the absence of fraud, an unconditional written contract of purchase of building material presumably embraced the whole agreement of the parties, and therefore evidence of an oral understanding to the effect that it should not become binding until the architect in charge had approved the materials was inadmissible.

Same—Duty of Court to Enforce, not to Make New Ones for Parties.
2.  The duty of courts is to enforce contracts as made, not to make new ones for the parties, however unwise its terms may appear to be.

Same—Building Material Contracts—Custom—Parol Testimony—Inadmissibility.
3.  Under the rule that where a contract is clear and explicit needs no interpretation and therefore evidence of usage and custom prevailing in the particular business with reference to which it was made is inadmissible to explain the contract, *held* that parol testimony relative to a contract of purchase of building materials to the effect that it was customary to first obtain the approval of the architect in charge before it should become binding was improperly admitted.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by Walter H. Wheeler against Robert C. James. Judgment for defendant and plaintiff appeals. Reversed and remanded.

*Messrs. Walsh, Scallon & Wine,* for Appellant, submitted a brief; *Mr. Jos. R. Wine* argued the cause orally.

*Mr. Henry C. Smith,* for Respondent, submitted a brief and argued the cause orally.

Parol evidence is admissible to prove a custom. (*Randall* v. *Kehlor,* 60 Me. 37, 11 Am. Rep. 169; *Atkinson* v. *Truesdale,*

1.  Supplementing written contract by proof of collateral oral agreement, see notes in 2 **Ann. Cas.** 146; Ann. Cas. 1914A, 454.

3.  General rule that parol testimony is not admissible to add to, vary or alter a written contract, see note in 17 **L. R. A.** 270.

127 N. Y. 230, 27 N. E. 844; *Woods* v. *Half*, 44 Tex. 633; *Meldrum* v. *Snow*, 9 Pick. (26 Mass.) 440, 20 Am. Dec. 489; *Robinson* v. *United States*, 13 Wall. (U. S.) 363, 20 L. Ed. 653 [see, also, Rose's U. S. Notes]; *Hayes* v. *Union Mercantile Co.*, 27 Mont. 264, 70 Pac. 975; 12 Cyc. 1081, 1082; 9 Cyc. 252.)

Usage may be proved to explain the true character of an act or contract. (*Lillard* v. *Kentucky Distillers & Warehouse Co.*, 134 Fed. 168, 67 C. C. A. 74; *Brown* v. *Hicks*, 8 Fed. 155; *Rhodesia Mfg. Co.* v. *Tombacher*, 129 N. Y. Supp. 420; *Beach* v. *Travelers Ins. Co.*, 73 Conn. 118, 46 Atl. 867.)

The district court having found that there was an express contract to the effect that the defendant should be excused from taking the system in case the architects refused to approve, we rely upon that well-established principle of law that if the condition of the sale be that the article shall accomplish a certain result in the opinion of some third person, his decision, in the absence of fraud, is final. (*McGlauflin* v. *Wormser*, 28 Mont. 177, 72 Pac. 428; *Robbins* v. *Clark*, 129 Mass. 145; *Nofsinger* v. *Ring*, 71 Mo. 149, 36 Am. Rep. 456; *Flint* v. *Gibson*, 106 Mass. 391; *United States* v. *Robeson*, 9 Pet. (U. S.) 319, 9 L. Ed. 142 [see, also, Rose's U. S. Notes]; *Connecticut Granite Co.* v. *New York Bridge Co.*, 32 App. Div. 83, 52 N. Y. Supp. 667.)

Our basic defense is that according to the express terms of the contract prepared by the plaintiff himself he was to furnish his system for the Hawthorne school building. He did not and could not do that, and therefore he cannot recover. (*Taylor* v. *Coldwell*, 3 Best & S. 826, 32 L. J. Q. B. 164; *Howell* v. *Coupland*, L. R. 9 Q. B. 462; affirmed, 1 Q. B. Div. 258.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action to recover damages for an alleged breach of a contract for the furnishing of certain diagrams and material to be used in the construction of a public school building

in the city of Helena. Plaintiff in his complaint alleges that he is an engineer, skilled in the art and practice of preparing diagrams and plans for the erection of buildings, more especially for that portion of building construction in which steel is used for concrete reinforcement; that on the seventh day of July, 1921, at Helena, he made and submitted to the defendant a proposal in writing for the furnishing of certain diagrams and reinforcing steel to be used in the erection of the Hawthorne School Building, respecting the construction of which the defendant was then contemplating entering into a contract with the school trustees having the matter in charge. It is also alleged that the defendant, having secured the contract for the erection of the school building in question, entered into a contract with the plaintiff, alleged to have been breached, consisting of a written proposal and acceptance as follows:

"Order No. 3165.

"Helena, Mont., July 7, 1921.

"Mr. R. C. James, Helena, Montana:

"Referring to the blueprints of plans of Arnold & Van House, architects of the proposed Hawthorne School Building, Helena, Montana, furnished me by Raymond C. Grant, and more particularly to the blueprints of my drawings Nos. 1 and 2 of framing plans for said building:

"My price for the necessary reinforcing diagrams and reinforcing steel for said building is four thousand six hundred eighty-five dollars ($4,685.00) steel delivered f. o. b. shipping point and allow railroad freight at present freight rates, except war tax, to Helena, Montana. Steel all straight, cut to length, except column and beam bars will be bent to detail and column spirals coiled to required diameter.

"The above price is based on using the Turner 'Spiral Mushroom System' of reinforced concrete construction designed in accordance with our standard practice as approved by C. A. P. Turner of Minneapolis, Minn.

"I include in the above price the necessary reinforcing diagrams and reinforcing steel for only the following reinforced

concrete items: Column footings; columns; basement floor slab over ducts, 1st and 2d floor slabs; reinforced concrete stairs and ramps; slab over coal room; necessary interior beams and lintels supporting said slabs and exterior brick walls; footings for basement walls; attic beams supporting wood joist ceiling and roof construction.

"Terms: Terms shall be cash thirty days from steel delivery days, payments to be made from time to time as said steel is delivered, in funds current in Minneapolis, Minnesota, payable to the order of Walter H. Wheeler at my office 1112 Metropolitan Life Bldg., Minneapolis, Minn. I to proceed promptly to get out the necessary reinforcing diagrams and order the reinforcing steel for shipment soon as shop and mill will ship same after my reinforcing diagrams and steel lists are complete and orders placed. I make the foregoing proposition for immediate acceptance in writing at my said office on the within form of acceptance as hereon below written, and same is subject to change without any notice.

"The above is all contingent upon strikes, accidents, delays of carriers and other delays unavoidable and beyond my control. All government taxes on freight to be paid by consignee.

"[Signed]   WALTER H. WHEELER."

"Helena, Mont., July 20, 1921.

"Walter H. Wheeler, 1112 Met. Life Bldg.,

"Minneapolis, Minn.:

"Referring to your foregoing proposition offering to furnish us the necessary reinforcing diagrams and reinforcing steel for the said Hawthorne School Building at Helena, Montana, for which Arnold & Van House are architects: We hereby accept your said offer as above and agree to pay you for the use of your said reinforcing diagrams and for the necessary reinforcing steel as above the sum of four thousand six hundred eighty-five dollars ($4,685.00) we to pay freight on all steel you ship in, you to credit us with the amount of said freight, except war tax, when paid, at freight rates in force July 7, 1921, provided we furnish you the original freight bills for

[70 Mont. 37.]

same receipted by the transporting railway companies. "Terms: Terms of shipment shall be cash thirty days from steel delivery days, payments to be made to you from time to time as said steel is delivered, in funds current in Minneapolis, Minnesota, payable to the order of Walter H. Wheeler at his office 1112 Met. Life Bldg., Minneapolis, Minn. It is understood each steel delivery is completed when steel is f. o. b. cars at shipping point.

"[Signed]          R. C. JAMES."

The defendant by his answer admits the proposal made by the plaintiff, the securing of a contract by the defendant for the erection of the building and that defendant signed the acceptance of the proposal as set forth in the complaint; but avers in effect that the acceptance was by him signed "under the terms and conditions and with the reservation" that the construction system proposed by the plaintiff should be acceptable to and approved by Arnold & Van House, architects in charge of the construction of the building. Issue was joined by reply and the case was tried to the court, a jury having been expressly waived. Judgment was entered in favor of the defendant and the appeal is prosecuted from the judgment.

Several errors are assigned which in our opinion present [1] but one question determinative of the appeal, namely: Was the contract entered into conditional upon the approval by the architects of the system of construction proposed to be installed in the building by the plaintiff?

It appears that the architects had specified the use of a system of reinforced concrete designated as "Trussed Bar and Rib Bar" wholly different from the Turner "Spiral Mushroom System" proposed by the plaintiff in substitution. The defendant James was several times interviewed by Raymond C. Grant, plaintiff's agent, who was anxious to have plaintiff's system installed, and the defendant was given figures on it in connection with the submission of his bid for the construction of the building. After the building contract had been

awarded to the defendant, July 11, 1921, Grant visited the defendant at the Hawthorne School grounds on July 20, 1921, and again they discussed plaintiff's proposal, and James said he would go down to the office of W. M. Biggs, local agent for the bonding company, to see if the bond required in connection with the construction of the building had been executed. Together they got into defendant's car and drove down to Mr. Biggs' office on Fuller Avenue. Mr. James went into such office, Grant awaiting him on the outside, and shortly afterward the defendant returned and showed his bond to Grant. Thereupon the defendant and Grant proceeded to the latter's office in the "Power Building Annex," where the defendant signed in duplicate the acceptance of the plaintiff's proposal as above set forth, constituting the contract. The defendant took one copy of the contract, and the other was left with Grant. Grant testified that the defendant did not attach any condition whatsoever to his execution of the agreement, whereas the defendant says the contract was executed with distinct parol understanding that plaintiff's proposed substitution should meet with the approval of the architects.

The defendant at the trial contended, and now contends, that there exists a custom in respect to contracts for the furnishing of building materials by virtue of which, unless the approval of the architect of the building is first obtained, the building contractor is not held responsible. He introduced in support of such contention a witness, Frank W. Richardson, of Billings, who testified that never in his experience of eight years in contracting for the sale of building materials to building contractors had he ever known a contractor to arrange "for the installation of materials or systems or anything which his contract called for as going into the building in advance of the approval by the owner or the architect for that particular stuff or system or materials." Further, that "It has been my experience that there is usually a clause—there is usually a certain article specified or, perhaps, equal, and if I install an article that I think is equal I am compelled to get

the architect's approval to my material. That is the general practice. * * * In a contract where it is stipulated the architect shall approve the materials as they go in, and, if for instance I had a contract with the contractor for furnishing something to him which had to be approved by the architect and I had signed a contract with him to furnish that sort of a thing, in case he failed to get the approval of the architect, the custom in my profession would be that the contract is canceled."

1. The statute provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute." (Sec. 10517, Rev. Codes 1921.)

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (*Id.*, sec. 7520.)

"A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent." (*Id.*, sec. 7521.)

A written contract signed by the parties to be bound is, in the absence of fraud, conclusively presumed to embody all the terms of their agreement. Delivery thereof after execution cannot be made conditionally (*Id.*, sec. 7522); and when a contract is reduced to writing, the intention of the parties must, if possible, be ascertained alone from the language employed (*Id.*, sec. 7530).

Whether the defendant could use the materials in the build-
[2] ing after he received them is of no present moment. He is a man of maturity and presumably versed in ordinary busi-

ness matters, being a building contractor with years of ex-
perience. His contract was made by him without limitation,
condition, or restriction. Presumably it embodies all the
agreement of the parties, and the defendant cannot avoid it
by asserting an oral understanding outside the terms of the
written agreement, to the effect that it should not be binding
unless the architect approved of the materials by the defendant
contracted for. The defendant may have acted hastily or un-
wisely, but that does not afford legal excuse for the repudia-
tion of the contract. As applicable, we here repeat the lan-
guage used by us in the case of *Hinerman* v. *Baldwin,* 67
Mont. 417, 215 Pac. 1103: "There is no legal impediment
shown which would prevent the parties from entering into
any contract which they saw fit, nor from expressing it in lan-
guage of their own, and under such circumstances it is the
duty of the court to give effect to the meaning and intention
of the parties as expressed in the language employed. The
court has no right to make a contract for the parties different
from that actually entered into by them. * * * When
parties have reduced their contracts to writing, the writing
is presumed to contain the final agreement arrived at between
them and to express their real purpose and intent. The duty
of the court is to enforce contracts, not to make new ones for
the parties, however unwise the terms may appear. To permit
the avoidance of contracts upon such pretext would be to open
the way to defeat the very purpose of contracts in writing."

2. But it is urged by defendant's learned counsel that the
[3] evidence introduced respecting custom was proper, and
that the contract should be construed with reference thereto.
It is noteworthy, however, that although the allegations of new
matter urged by way of affirmative defense in defendant's
answer are very lengthy, neither fraud nor custom are pleaded.
There was no attempt to avoid the contract because of mis-
representation or fraud. The statute provides that evidence is
proper upon a trial concerning "usage, to explain the true charac-
ter of an act, contract, or instrument, where such true character

[70 Mont. 37.]

is not otherwise plain; but usage is never admissible, except as an instrument of interpretation." (Subd. 12, sec. 10531, Rev. Codes 1921.) This language is clear and needs no elucidation. It is controlling. The character of the contract in question is plain; no explanation thereof is necessary for any purpose, and it does not require interpretation. The language is neither ambiguous nor uncertain. The contract consists of a straight-out offer, and an equally plain acceptance. The meeting of the minds of the parties is evident. As well said by Mr. Chief Justice Brantly, speaking for this court, in the case of *Cook* v. *Northern Pac. Ry. Co.,* 61 Mont. 573, 203 Pac. 512: "Such evidence [of custom] is never competent when the contract is clear and explicit in its terms and the necessity for interpretation does not arise. Under these circumstances the intention of the parties is to be ascertained from the writing itself without resort to evidence. * * * There is no controversy but that the contracts in question here are clear and explicit in their terms. This being so, resort could not be had to parol evidence to add to them any stipulation or term which they did not contain at the time they were accepted."

The recognized rule, to which we subscribe, as applicable under our statute, is laid down in Ruling Case Law as follows: "The primary purpose in permitting parol evidence of a custom to be introduced when the construction of a written instrument is involved is to enable the court to arrive at the real meaning and intention of the parties, where this cannot be ascertained by the terms of the contract. Where the words employed to express a particular condition in a contract in writing are ambiguous and cannot be satisfactorily explained by reference to other portions thereof, parol evidence may be admitted to show the meaning intended by the parties as a matter of usage." (Vol. 27, p. 169.)

Within the application of the statute and the authorities generally, there is no room for invoking the rule as to usage or custom in this case.

The judgment is reversed and the cause remanded to the district court of Lewis and Clark county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.