RACHOU, Appellant, *v.* McQUITTY, et al., Respondents.
No. 8974.
Submitted January 26, 1951. Decided March 28, 1951.
229 Pac. (2d) 665.

(1)

2

Mr. Franklin S. Longan, Billings, for appellant.

Mr. Ralph J. Anderson, Mr. Albert C. Angstman, Helena, for respondents.

Mr. Anderson and Mr. Longan argued orally.

MR. JUSTICE METCALF:

In 1943 I. S. and E. F. McQuitty, defendants herein, entered into a contract to sell to John J. Holmes certain described lands and transfer leases on other lands used in conjunction with the

deeded land. In 1945 this contract was assigned to the plaintiff, Peter Rachou, and a contract for a deed was entered into between Rachou and the McQuitty brothers providing for a modification of the Holmes contract in certain respects. After the payment of the purchase price by Rachou to the McQuitty brothers and a satisfaction of the mortgage on the deeded land, a dispute arose as to the leases, as to payment for fences, and as to the amount of interest due.

Rachou brought this action for specific performance of the contract and asked that the defendants be required to assign the leases and for other equitable relief. The defendants filed a general demurrer which was overruled. They then answered. The plaintiff was successful in striking out a portion of the defendants' answer. The plaintiff then replied and issue was joined. The cause was tried without a jury and findings of fact and conclusions of law made by the trial judge. Judgment was entered and from this judgment the plaintiff has appealed. The defendants have made cross-assignments of error for overruling their demurrer and for sustaining in part the plaintiff's motion to strike a portion of the answer.

The dispute regarding the payment of interest in the amount of $234.35 arose as follows: The Holmes contract provided for interest at the rate of 5 % on the whole sum remaining from time to time unpaid. The contract for a deed between the plaintiff and the McQuitty brothers recited that the Holmes contract had been assigned to Rachou and that ''the said assignee of said contract for deed desires a modification of the contract so assigned.'' Therefore the modified contract was made. It was dated June 13, 1945, and on that date Rachou paid to the McQuitty brothers the sum of $2,550 leaving an unpaid balance of $25,000. In accordance with the modified contract the further sum of $12,500 was paid on November 2, 1945, which was the day the deed and abstract of title was delivered. For the other $12,500 due, promissory notes payable in five years and bearing interest at the rate of 5 % per annum were given.

It is defendants' contention that inasmuch as the Holmes contract provided for interest on the unpaid balance, and between June 13, 1945, and November 2, 1945, there was an unpaid balance of $25,000, they were entitled to interest amounting to $234.35.

Reliance is placed on the following paragraph from 17 C. J. S., Contracts, sec. 379, p. 868: "An agreement, when changed by the mutual consent of the parties, becomes a new agreement, which takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged; in other words, a contract may be abrogated in part and stand as to the residue. The new contract supersedes the first to the extent that the two will be unable to stand together."

However, one of the parts of the Holmes contract that was modified was the provision for payment. The Holmes contract provided for a selling price of $28,000 and a schedule of payments of $2,375 per year and required that interest be paid "at the rate of five per cent per annum, payable November 1st annually, on the whole sum remaining from time to time unpaid * * *." The Rachou contract provided for a selling price of $27,550 and a different schedule of payments.

When the Holmes contract was modified and a different schedule of payments agreed to, Rachou then became obligated only to pay principal and interest as set forth in the modified contract. The vendors had no right to separate the item of interest from the remainder of the Holmes contract setting forth the terms and means of payment and insist that this one feature was unchanged by the modified schedule of payments of principal and interest in the second contract.

In addition to the deeded land conveyed, the vendors agreed to transfer and assign certain leases on lands used in conjunction with the deeded lands. These leases consisted of three leases from the Northern Pacific Railway Company and one from the State of Montana. The contract provided: "The parties of the first part [defendants] further agree that upon

the completion of all the payments under this contract as well as the payment of the note secured by mortgage mentioned above, they will assign to the party of the second part [plaintiff] whatever interest they may have in those leases used in conjunction with the aforesaid land as follows: * * *"

Rachou was to reimburse the vendors for rentals paid by them on the leases.

In his complaint the plaintiff alleged that he had performed all the conditions of the contract and had demanded from the defendants assignments of the leases but that the defendants "have refused and now refuse so to do, and defendants have not executed any assignments to the plaintiff * * *". The plaintiff asked for specific performance of the covenants of the contract "and that the said defendants, and each of them, be adjudged to assign the leases to the lands hereinbefore described, and to execute good and sufficient assignments thereof to the plaintiff.

"2. That it be adjudged that the plaintiff is the owner of said leases and that the defendants, and each of them, have not any right, title or interest therein, and that they be enjoined from asserting any right, title or interest therein."

The defendants in their answer admitted that "they agreed to assign to plaintiff whatever interests they had in certain leases on certain land therein described at the time plaintiff made all of the payments thereon in said modified contract provided." They denied that they "agreed to assign whatever interest they might acquire in said lands."

The defendants then alleged: "That the defendants at the time of the execution of said modified contract aforesaid had leases on the lands described in * * * plaintiff's complaint; that defendants in order to preserve any interest in the leased lands aforesaid were compelled to and did enter into purchase and sale contracts with the owners of a portion of said leased lands as follows, to-wit: [Here follows a description of the lands leased from the Northern Pacific Railway Company.] That by reason of the purchase of said lands by defendants all

6

existing leases thereon owned by defendants were cancelled, terminated and ended. Defendants further allege that all of such purchases were made by defendants with the knowledge and consent of plaintiff but without any agreement as to how or in what manner the plaintiff could acquire the interest in said lands and such purchase agreements.''

The plaintiff's reply admitted that the defendants entered into a contract for purchase of the Northern Pacific lands, formerly leased, and admitted that the defendants made certain payments on the purchase price of these lands. The plaintiff's reply further alleged: ''* * * that in this connection * * * on June 26, 1947, and long prior to the institution of this action, the plaintiff repaid the defendants One Thousand Three Hundred and Twenty-one Dollars and Eight Cents ($1321.08) all in accordance with the demands made by the defendants prior to the institution of this action; that said defendants failed and refused to assign the contracts for purchase * * * notwithstanding they had agreed to do so on May 31, 1947, upon receipt of the repayment of the amounts due them as aforesaid; that plaintiff admits that the purchases alleged * * * were made with the knowledge and consent of the plaintiff, and in this connection alleges that all purchases so made were made with the money of the plaintiff; that the down payment purchase price of the purchases alleged in * * * the defendants' answer was Six Hundred and Sixty-nine Dollars and Fifty-seven Cents * * *; that said payment was made to the defendants on April 23, 1946; that the plaintiff specifically denies that there was no agreement as to how or in what manner the plaintiff could acquire the interest of the lands described * * * and alleges that the terms of said agreement were definitely specified by the defendants and complied with in all conditions and particulars by the plaintiff; that said terms were to make the down payment and all subsequent payments until the contract payments on the contract alleged in plaintiff's complaint were paid, and then to assign said contracts of purchase to plaintiff.''

The court in its first conclusion of law said: ''1. That under

the pleadings in this case this Court is without authority to require the defendants to assign, set over and transfer to the plaintiff the contracts of purchase by defendants from the Northern Pacific Railway Company * * * dated March 9, 1946; over the objections of the defendants made to all evidence offered for such purpose for the reason that it would be a departure from the cause of action pleaded in the plaintiff's complaint.''

Thus the plaintiff, by his complaint, sought specific performance of a contract to assign leases that he knew were no longer existent and beyond the power of the defendants to assign. Then in his reply he admits that such leases have been converted into contracts for purchase, that the conversion took place before the cause was instituted and that the plaintiff had repaid the defendants for the money advanced on the purchase contracts and the defendants had refused to assign the contracts for purchase.

The plaintiff's original action then was for specific performance of the contract to assign the Northern Pacific leases. The answer set up a defense that the leases were cancelled and beyond the power of the defendants to assign. This was a complete defense. Restatement of the Law of Contracts, sec. 368, p. 669; Alley v. Peeso, 88 Mont. 1, 290 Pac. 238. Impossibility of performance is a defense even though the impossibility is the fault of the defendant. Equity will not order a defendant to do that which is beyond his power. 5 Williston, Contracts, Rev. Ed., sec. 1422, p. 3973; 4 Pomeroy Eq. Juris., 5th Ed., sec. 1405b, p. 1047.

The plaintiff's prayer was: ''Wherefore, plaintiff prays for judgment as alleged in his complaint except as to plaintiff's prayer for assignment of leases [on Northern Pacific Railway lands] and as to such lands prays that defendants be ordered and adjudged to assign the contracts of purchase therefor to the plaintiff, and that plaintiff be declared the equitable owner of said lands, and that the defendants have no right, title or interest therein.''

8

By this reply and prayer for relief thereto the plaintiff sets forth a new and different cause of action by admitting that the leases were terminated and cancelled, that contracts of purchase had been entered into and demanding that the purchase contracts be assigned and alleges that a contract to so assign and transfer had been entered into on May 31, 1947.

In his reply the plaintiff abandoned the original cause of action and sought to specifically enforce a different contract not mentioned in the complaint.

The function of a reply is established by statute, R. C. M. ■ 1947, sec. 93-3601, and has been frequently discussed in decisions of this court and in State ex rel. Barron v. District Court, 119 Mont. 344, 174 Pac. (2d) 809, the prior cases are compared and analyzed. In Thornton v Kaufman, 35 Mont. 181, 88 Pac. 796, 797, this court ruled that ''the replication is responsive to the new matter or counterclaim alleged in the answer, and, while its allegations may in a particular instance aid the answer, they may not in any case aid the complaint.'' Again in McCarthy v. Employers' Fire Ins. Co., 97 Mont. 540, 37 Pac. (2d) 579, 583, 97 A. L. R. 292, this court declared: ''* * * the reply cannot aid the complaint by supplying omissions therein or broadening its scope by adding new grounds of relief, or permit the plaintiff to take a position inconsistent with that taken in the complaint.'' See also, Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601.

The allegations in the plaintiff's reply admitting that the ■ railroad leases had been converted into contracts of purchase and that defendants failed and refused to assign these contracts notwithstanding that they had agreed to do so on May 31, 1947, constituted such a departure from the contract pleaded in the complaint and prayer for relief therein that it could not be the basis for any recovery. Doornbos v. Thomas, 50 Mont. 370, 147 Pac. 277.

The plaintiff insists that the new issue was raised by the defendants' answer. But the issue raised by the answer was a defense to the plaintiff's action for specific performance, a

defense about which the plaintiff knew. The new issue inserted into the case was that of a different and separate contract alleged in the reply. This was not in contravention of the allegations of the answer; those were admitted, but this issue was one that should have been pleaded in the complaint to afford the defendants an opportunity to affirm or deny and to prepare a defense against.

The plaintiff may have a cause of action on the modification of the contract by the alleged agreement of May 31, 1947. He might have obtained leave to amend his complaint and ask for specific performance of this alleged contract to assign and transfer the purchase contracts in lieu of the leases. But these matters cannot be raised by the reply. "If it were otherwise, it is difficult to perceive an end of the process of joining the issues in any cause." State ex rel. Barron v. District Court, supra; Crenshaw v. Crenshaw, 120 Mont. 190, 182 Pac. (2d) 477, 483.

The question of specific performance of the alleged contract to transfer and assign the purchase contracts or damages for failure to do so has never been raised by sufficient pleadings and under the pleadings before it the trial court properly refused to go into those matters which were not before it at the trial and not before us upon this appeal.

Under the contract and within the issues raised by the pleadings the plaintiff was entitled to the transfer of the lease on the state lands. The trial court decreed specific performance of the contract to transfer but conditioned it upon payment by the plaintiff of the sum of $313.55 to the defendants. Of this amount, $234.35 was for the interest on $25,000 which has already been discussed and to which the defendants were not entitled under the contract. The remaining $79.20 was for reimbursement for rentals paid by the defendants to the state. The contract provided for such reimbursement and the plaintiff made it. In 1947 the rental in the amount of $36 was included in plaintiff's check to the defendants. This check was never cashed but was returned to the plaintiff. In 1948 rental of

$43.20 was a part of the money the plaintiff tendered to the clerk of the court. It is apparent that the court was aware that there had been a tender of the reimbursement due but inasmuch as the $79.20 was intermingled with other funds in controversy the defendants had never actually received it. The result of the finding is not to require the plaintiff to pay this account twice but to keep the record straight and make certain that the defendants are reimbursed before the lease is transferred. In view of the conclusion reached with respect to the interest this part of the decree is modified by reducing the amount to be paid by the plaintiff as a condition for the transfer of the lease from $313.55 to $79.20.

The defendants' answer contained the following paragraph: "Defendants now offer to do equity; that if plaintiff will pay the interest owing to defendants on the contract in the sum of $234.35, and pay the amount of payments and interest heretofore paid on purchase contracts herein alleged together with interest on such payments at the rate of six per cent per annum from date of such payments, the reasonable value of the fences, and the reasonable rental value of such of the premises as they purchased on contracts, and the rentals paid on leased lands which they have not been repaid, the defendants will assign to plaintiff the one lease in question and assign all purchase contracts herein alleged and set forth, and transfer all improvements the property of defendants on said lands unto plaintiff."

Section 93-3401, R. C. M. 1947, provides for the contents of the answer. This "offer to do equity" is merely an offer of compromise and settlement and has nothing to do with the pleading. When it was not accepted in its entirety within the time prescribed by section 93-8201, R. C. M. 1947, it had no further effect except as to fixing costs under certain conditions not applicable here. But such an offer could not be used in evidence nor could it be regarded as an admission that the defendants had waived any of the other defenses or that they

were obliged to transfer and assign the purchase contracts. R. C. M. 1947, sec. 93-2201-5.

The defendants contend that their demurrer should have been sustained because there is no allegation in the complaint that at the time the action was commenced or at the time the contract was made the defendants had any interest in any leases. This demurrer was properly overruled. The inability of the defendants to perform is a matter of defense and the pleader did not have to affirmatively allege the existence of the leases in question. Christiansen v. Aldrich, 30 Mont. 446, 76 Pac. 1007; 5 Bancroft Code Pleading, sec. 2332, p. 4233.

The defendants' cross-assignment of error for striking the portion of their answer claiming compensation for fences built upon the leased land was without merit. They offered to show custom and usage in the locality that vendors were permitted to remove fences or be compensated therefor. Under the provisions of the leases from the State of Montana and the Northern Pacific Railway the lessees were permitted to remove any fences. But under both the Holmes contract and the modified contract between Rachou and the defendants the plaintiff was entitled to receive all the "buildings and improvements now on said land" after performance of the contract. Fences are "improvements" under such a provision. Calhoun v. Babcock Bros. Lumber Co., 198 Ga. 74, 30 S. E. (2d) 872, 877; In re Leet Township Road, 159 Pa. 72, 28 A. 238, 239. Evidence of usage is not admissable where the contract is clear and explicit. Wheeler v. James, 70 Mont. 37, 45, 223 Pac. 900.

The cause is remanded for correction of the judgment in accordance with this opinion. Each party will bear his own costs upon this appeal.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN: (concurring in part and dissenting in part).

12

I agree with that part of the foregoing opinion which holds that defendants are not entitled to the item of interest which they claim. I also agree generally with the principles of law announced in the foregoing opinion so far as they declare that a pleader may not charge one cause of action in the complaint and a different one in the reply. It is my opinion that those principles are improperly applied to the facts here presented. Defendants' answer, after alleging that the leases had been converted into contracts of purchase in order to preserve their interest in the lands and after alleging that the purchases were made with plaintiff's knowledge and consent, contained a separate offer to do equity which reads as follows: "Defendants now offer to do equity; that if plaintiff will pay the interest owing to defendants on the contract in the sum of $234.35, and pay the amount of payments and interest heretofore paid on purchase contracts herein alleged together with interest on such payments at the rate of six per cent per annum from date of such payments, the reasonable value of the fences, and the reasonable rental value of such of the premises as they purchased on contracts, and the rentals paid on leased lands which they have not been repaid, the defendants will assign to plaintiff the one lease in question and assign all purchase contracts herein alleged and set forth, and transfer all improvements the property of defendants on said lands unto plaintiff."

I think this offer to do equity and plaintiff's reply thereto presented the only issues in the case and that if there were a departure from the complaint it was by reason of the allegations in the answer. I think the case is controlled by Christiansen v. Aldrich, 30 Mont. 446, 76 Pac. 1007.

Since plaintiff has met all the valid conditions named in defendants' offer contained in the answer, I think he is entitled to the relief asked, viz., to have assigned to him defendants' interest in the land whether represented by leases or by contracts of purchase.

Rehearing denied April 23, 1951.