## Speiss v. Martin.

(Decided June 24, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Specific Performance—Holding Land as Trustee.—A person who takes a conveyance of the legal title to land with knowledge that his grantor has agreed to sell to another, holds it subject to the equitable estate already vested in such intending purchaser. Said grantee takes the land impressed with the trust in favor of the original vendee and holds it as trustee for such vendee, and can be compelled at the suit of said vendee to specifically perform the agreement by a conveyance of the land.

2. Brokers—Authority to Bind Principal.—A real estate broker has implied authority to do any act necessary to effectuate a purchase or sale of land, or that which is usually incidental thereto, but in the absence of a special authorization he has no power to enter into a contract for the purchase or sale of land so as to bind his principal.

3. Appeal and Error—Finding of Chancellor.—Where the evidence is conflicting and questions of fact by reason thereof difficult of solution and upon a consideration of the whole case the mind is left in doubt as to the correctness of the chancellor's findings the judgment will not be disturbed.

GIFFORD & STEINFELD, BEN CHAPEZE and W. S. SANFORD for appellant.

JOHNSON, HIEATT & SCHEIRICH and J. J. HANCOCK for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

A. C. Becher owned a thirty foot unimproved lot on Wentworth avenue, in Cherokee Heights, a subdivision of Louisville.

The property west of this lot was owned and occupied by appellant; appellee resided on the land east of said lot.

In the spring of 1917 appellant, with the permission of the owner, planted a garden on this lot. Appellee desirous of acquiring the vacant lot made inquiry of the agent from whom she had purchased her property to know if he had the lot for sale. This was in July, 1917. Receiving an answer in the affirmative she later called at the office of said agent to see about the purchase of the property. The price asked was $600.00, but appellee was unwilling to pay this amount unlesss it would cover all expense incident to the deal, including the title examination, recording fees, etc. The agent telephoned Mr. Becher what appellee was willing to pay, whereupon, according to the agent, Becher accepted the proposition and said it was all right, so that he got $550.00 net. The commission was $35.00; title examination $12.50; recording fee $2.00. Becher was advised that as soon as the agent could have the title examined a deed would be prepared and for this latter purpose he inquired and received from Becher his wife's name. He also informed Becher that appellee deposited $25.00 to bind the trade. A few days later the balance of the purchase price was paid. Having been authorized by Becher to go ahead and close the deal the agent had the title examined, and when a deed he had prepared was delivered to Becher for execution Becher said he had that day deeded the property to another, to-wit: the appellant. Thereafter appellee demanded of appellant that she execute a deed to her (Mrs. Martin) tendering with the deed the amount of the purchase price. Appellant declined so to do and this suit was brought for the purpose of compelling her to specifically perform the contract. The chancellor granted the relief prayed for, directing appellant to execute a deed for the lot in question and upon her failure to do so the commissioner was directed to comply with the order of court. This appeal followed.

Some time in the early part of August, 1917, appellee's daughter called at the home of appellant for the purpose of paying a milk bill, at the same time informing appellant that appellee had purchased the lot and

would like to have the potatoes thereon removed as soon as convenient. Either that day, or shortly thereafter, appellant telephoned J. C. Bennett, her son-in-law, instructing him to call upon Mr. Becher to see if the lot had actually been sold and if not she told him to close a deal for it. When Becher was told that appellant had been ordered by someone claiming to own the lot to remove her potatoes, he (Becher) informed Mr. Bennett that he had not disposed of the lot and was still the owner of it, whereupon Mr. Bennett entered into a contract to purchase the lot, as a result of which negotiations the property was conveyed by Becher to appellant on August 17, the day the agent tendered to Becher a deed to appellee.

As to appellee's right to maintain this suit. It seems to be well settled that a person who takes a conveyance of the legal title to land with knowledge that his grantor has agreed to sell to another, holds it subject to the equitable estate already vested in such intending purchaser. In other words the grantee is treated as a trustee for the vendee. As said in Story's Equity Jurisprudence, sec. 789:

"This general principle upon which this doctrine proceeds is, that from the time of the contract for the sale of the land the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. And every subsequent purchaser from either with notice becomes subject to the same equities as the party would be from whom he purchased."

See also section 784 of the same work.

The rule on the subject is thus stated by Pomeroy in his work on contracts, section 465:

"The doctrine is well settled that when the vendor, after entering into a contract of sale, conveys the land to a third person who has knowledge or notice of the prior agreement, or who for any other reason is not a *bona fide* purchaser for value, such grantee takes the land impressed with the trust in favor of the original vendee, and holds it as trustee for such vendee, and can be compelled at the suit of the vendee to specifically perform the agreement by conveying the land in the same manner, and to the same extent, as the vendor would have been liable to do, had he not transferred the legal

title; and such grantee is the proper defendant in the suit against whom to demand the remedy of a conveyance. For the same reason, and in the same manner, the rights of a subsequent vendee may be cut off or foreclosed in a suit by the prior purchaser.''

See also 36 Cyc. 761; Simms v. Richardson, 2 Litt. 274; Thomas, Extx. v. Haly Coal Co., 189 Ky. 698, 225 S. W. 1053; Forthman v. Deters, 206 Ills. 159, 69 N. E. 97, 99 Am. St. Rep. 145; Cummins v. Beevers, 103 Va. 230, 48 S. E. 891, 106 Am. St. Rep. 881. There can be no question, therefore, of appellee's right to maintain this suit.

It is said the agent had no authority to sign Becher's name to the contract of sale with appellee. A real estate broker is ordinarily an agent of limited authority, and is strictly confined to his instructions. However, he has implied authority to do any act or to make any declaration in regard to property necessary to effectuate a purchase or sale, or that which is usually incidental thereto, but in the absence of a special authorization such broker has no power to enter into a contract for the purchase or sale of land so as to bind his principal. 19 Cyc. 196, 197; 2 C. J. 615.

Hieatt, the real estate agent, testified he had had the property in charge for several years, and in his conversations with Becher over the 'phone not only did he explain the situation fully to Becher as to the price, terms, etc., but Becher assured Hieatt that if the sale would net him $550.00 he would be satisfied and for Hieatt to go ahead and close the deal at that figure, which Hieatt told him he would do. According to the testimony, Hieatt had direct and positive authority to enter into a binding contract with Mrs. Martin. Becher admitted the telephone communication with Hieatt, but says he did not understand Hieatt to say he would close the deal, and not having heard from Hieatt he agreed to and did sell the property to appellant. The case, therefore, narrows itself down to the one point, viz.: whether appellant acquired the property with notice of the prior right of equity of appellee. The testimony on this point is conflicting. The chancellor was of the opinion that appellee was entitled to the relief sought. In other words that Becher, through his accredited agent, Hieatt, had entered into a binding contract to convey the lot to ap-

pellee, a fact which was known to appellant at the time of the conveyance to her.

It has been oftentimes written by this court that where the evidence is conflicting, and questions of fact by reason thereof difficult of solution, if upon a consideration of the whole case the mind is left in doubt as to the correctness of the judgment, the findings of the chancellor will not be disturbed. This is the situation that confronts us. There is a contrariety of the testimony and since we cannot say the judgment is against the decided weight of the evidence it must be and is accordingly affirmed.