Retha **COX** et al., Appellants,

v.

Ray **HARDY** et al., Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1963.

Jesse S. Hogg, Winchester, D. L. Pendleton, Jr., Stanton, for appellants.

H. M. Shumate, Irvine, for appellees.

CLAY, Commissioner.

Appellants (landlords) brought suit to recover rental allegedly due under a lease. Appellees (tenants) defended on the ground the landlords' breach of a covenant to repair caused them to abandon the premises and terminated their obligation to pay rent. The jury sustained this defense in returning a verdict for the tenants. The landlords contend they were entitled to a directed verdict and that an instruction was erroneous.

The leased premises consisted of a building suitable for the conduct of the mercantile business. The lease was executed in 1954 for a term of 20 years at a rental of $50 per month. The landlords covenanted to

keep the property in substantially the same condition as it was when leased by making necessary repairs. In 1956 the floor began to give way. One of the tenants testified he notified the landlords of this condition and was assured something would be done about it. Nothing was, and the tenants put in a rough floor. There was evidence that later that year or early in 1957 the floor was sagging badly and some of the windows at the rear of the building fell out due to the rotting of the frames. Apparently the landlords were again notified but advised they could not make the necessary repairs. The tenants made some attempt to rectify the condition and continued in possession of the building for approximately two more years. They then moved out, having paid all rent due up to that time.

The landlords contend that the obligations to pay rent and to repair are independent, and unless the lease expressly provides for forfeiture in the event of failure to repair, the tenants must still pay rent (with the possible right to set off against the rent a proper claim for damages). While this general proposition is sound, under certain circumstances a superseding legal principle is applicable. If the failure to repair results in the premises becoming untenantable, uninhabitable, or unfit for the purpose for which they were leased, and the tenant is thereby forced to leave, the landlord's dereliction will constitute "constructive eviction" of the tenant. This terminates the lease and the obligation to pay rent.

Although the landlords contend that constructive eviction has not been recognized in Kentucky and that the majority view is opposed to it, we find the contrary to be true. See Harthill v. Cooke's Ex'r., 19 Ky. L.Rep. 1524, 43 S.W. 705; Estes v. Gatliff, 291 Ky. 93, 163 S.W.2d 273; Venters v. Reynolds, Ky., 354 S.W.2d 521; 32 Am.Jur., Landlord and Tenant, section 514 (page 419); 28 A.L.R. 1477; 116 A.L.R. 1235; 28 A.L.R.2d 446; 91 A.L.R.2d 638.

In order to have constructive eviction two conditions must exist: (1) an act or omission of the landlord which substantially interferes with the tenant's beneficial enjoyment of the leased premises, and (2) the tenant's abandonment of the premises by reason thereof. See 52 C.J.S. Landlord and Tenant § 455 (page 171). The timeliness of the tenant's departure, as in this case, may be a controlling consideration.

The landlords contend as a matter of law the tenants *waived* their right to claim they were constructively evicted because they did not abandon the premises *within a reasonable time* after the breach of the covenant to repair. This doctrine of "waiver" has had wide acceptance. See 52 C.J.S. Landlord and Tenant § 459 (page 180); 91 A.L.R.2d 638. There are several objections to that theory as applied to the present facts.

The basic issue in a constructive eviction case is whether the tenant abandoned the premises *because* of an intolerable situation created by the landlord. A substantial delay by the tenant in leaving the premises after the development of a particular condition would indicate he had not been ousted by the landlord rather than that he had waived his right to make such a claim. It must also be borne in mind that "waiver" is the "voluntary surrender of a known right". Jones v. Rayborn, Ky., 346 S.W.2d 743. Particularly where the condition created by the landlord is a continuing one, as here, it is difficult to say that failure to leave the leased premises at the earliest opportunity constitutes a *voluntary relinquishment* of the tenant's right to claim constructive eviction. The mere fact that the tenant continues to live for a while with a deteriorating condition of the premises does not in itself constitute a waiver.

Where there is a continuing breach with cumulative effect, the tenant does not lose his right to claim constructive eviction because he does not leave the premises promptly after the creation of the first ob-

jectionable condition. See Lynder v. S. S. Kresge Co., 329 Mich. 359, 45 N.W.2d 319, 28 A.L.R.2d 440; Sewell v. Hukill, 138 Mont. 242, 356 P.2d 39; Marks v. Dellaglio, 56 App.Div. 299, 67 N.Y.S. 736; New York State Investing Co. v. Woolf, 84 Misc. 66, 145 N.Y.S. 945; Batterman v. Levenson, 102 Misc. 92, 168 N.Y.S. 197; E. Esarsee, Inc. v. Holland, 241 App.Div. 736, 269 N.Y.S. 745; 91 A.L.R.2d 638, 658.

It is thus apparent that the "waiver" doctrine, for which the landlords contend, does not adequately afford a solution to the problem here presented. The more direct approach is to consider the time of abandonment in its relationship to the other circumstances on the issue of whether the tenants were evicted by the landlords. In other words, instead of invoking the backhanded theory that the tenant may have waived his right to claim constructive eviction, the most logical and sensible approach is to determine if *there was in actuality a constructive eviction in the first place.* This would avoid the legal gymnastics involved in declaring that the tenant's rights had been violated, that the violation had been waived, but that subsequent violations of the same nature revived the tenant's rights. See Re Consumers World, Inc., D.C.Mass., 160 F.Supp. 238.

■ The significant issues developed in this case were (1) whether the leased premises became untenantable because of the landlords' failure to repair, and (2) whether the tenants abandoned the premises because of this condition or for some other reason. The evidence affords some basis for the conclusion that the cumulative effect of the landlords' failure to repair was to create a gradually deteriorating condition which may or may not have finally induced the tenants to leave the premises. Since the facts were in dispute and differing reasonable inferences could be drawn from them on these issues, the decision was a matter for the jury and the landlords were not entitled to a directed verdict.

■ The landlords further contend the instruction to the jury concerning the right of the tenants to terminate the lease was erroneous. It authorized a finding of constructive eviction if the landlords with knowledge of the need of repairs failed to maintain the leased building in substantially the same condition as it was when rented. From our discussion above it is obvious this instruction did not fully state the law of constructive eviction. On its face it was deficient because it did not require the jury to find that the plaintiffs' breach of the covenant to make necessary repairs caused the leased premises to become untenantable, uninhabitable, or unfit for use, nor did it require the jury to find that the defendants abandoned the premises because of the creation of such a condition, both of which are necessary elements of constructive eviction. However, the landlords neither offered an instruction on this issue nor did they object to the instruction as given. Clearly under CR 51 they are not in the position to assign as error the giving of this instruction. Sams v. Sigmon Ikerd Co., Ky., 280 S.W.2d 515; Young v. De Bord, Ky., 351 S.W.2d 502.

The justification for CR 51 is exemplified by this record. In essence that Rule requires the lawyers in a case to assist the judge in giving correct instructions and disallows an ex post facto objection as a means of obtaining a reversal of the judgment on appeal. (The same principle applies when a party fails to object to evidence or to make known his position on a ruling of the court. See CR 46.) In this case at the very outset, by answer, the appellees made it clear their whole defense was constructive eviction. The principal issue tried was that of constructive eviction. When the case was submitted to the jury all parties knew this issue would be submitted. The appellees offered an instruction, which, as we have observed, did not fully encompass the applicable law.

Appellants did object to this offered instruction on the single ground it did not recite the appellants were entitled to *notice*

of the need for repairs. The trial judge thereupon modified it to incorporate the only objectionable feature which they had called to his attention. With no further objections, the judge could assume the parties had accepted the instruction as correctly stating the law for the jury. Under these circumstances appellants could not justly urge a later discovered error in the instruction as a ground of reversal. See Clay, Kentucky Practice, Vol. 7, CR 51, Comment 5 (page 91); 91 A.L.R.2d 836.

The judgment is affirmed.