James E. ENGLAND and Robert W. Smith, Appellants,

v.

George E. SPALDING, Jr. and R. D. Johnson, Appellees.

James E. ENGLAND and Robert W. Smith, Appellants,

v.

RADCLIFF WASH–O–RAMA, INC., Appellee.

Court of Appeals of Kentucky.

Nov. 20, 1970.

Paul M. Lewis, Hatcher & Lewis, Elizabethtown, Lawrence S. Grauman, Louisville, for appellants.

Harold K. Huddleston, Huddleston & Van Zant, Elizabethtown, for appellees.

STEINFELD, Judge.

This is an appeal from a judgment dismissing a claim for back rent, denying specific performance asserted to force compliance with a contract involving the sale of real estate and dismissing certain counterclaims. We affirm.

James E. England and Robert W. Smith, owners of land leased to Radcliff Wash-O-Rama, Inc. for a five-year term with the right of renewal for a like period, sued their tenant for two months' unpaid rent in the total amount of $600. The tenant denied owing the rent and asserted a counterclaim for damages in the amount of $3,000 claiming that England and Smith had failed to build a road as provided in the lease. George E. Spalding, Jr. and R. D. Johnson were principal stockholders and directors of Wash-O-Rama.

In another action England and Smith sued Spalding and Johnson alleging that they had entered into a contract with them to purchase the real estate leased to Wash-O-Rama and that they had failed to comply with the terms of the purchase contract. They demanded damages in the sum of $1,000 and specific performance. Spalding and Johnson counterclaimed for $15,000 alleging that England and Smith had " * * * breached the conditions of the contract entered into between the parties * * * ".

The two cases were assigned for trial at the same time and while there was no formal order directing that they be tried together, after the trial the court noted of record that "these cases were heard together, as they involve substantially the same parties and the same property." The trial court entered one judgment dismissing both actions. England and Smith have appealed—there is no cross-appeal. Spalding and Johnson and Wash-O-Rama have moved to dismiss the appeal in the suit against Wash-O-Rama claiming that the amount in controversy in that action is below the jurisdictional amount required by KRS 21.060. Appellees also contend that the "Order and Judgment" appealed from was not a final order as it did not dispose of the counterclaims.

■ The two cases involved the same real estate and directly or indirectly the same parties. The alleged sale of the property was subject to the lease to Wash-O-Rama. One judgment disposed of all claims and counterclaims. We hold that the appeal as to Wash-O-Rama was jurisdictionally permissible and should not be dismissed.

The judgment entered on December 7, 1967, provided:

"These cases having been consolidated for purpose of trial and the court being duly advised it is ordered and adjudged both actions be and they are dismissed with prejudice at the cost of plaintiffs to which ruling plaintiffs object and except."

This judgment followed by one day the entry of an opinion and order in which the trial judge directed that orders be prepared dismissing all claims and counterclaims. On December 12, 1967, England and Smith filed notice of appeal from that judgment (CR 73.02(2)) and designated the December 7, 1967, judgment as the act from which they were appealing. At the same time they served and filed a designation of record. CR 75.01. Four days later they moved " * * * the court to amend the Order and Judgment entered * * * on December 7, 1967, * * * to include therein: 1. a provision denying both defendants counterclaims, and 2. fixing therein the jurisdictional amount in controversy in excess of $2,500."

An amended judgment was entered on December 26, 1967, providing:

"1. All counterclaims in the above styled cases are hereby dismissed with prejudice at defendants' cost.

2. It is hereby adjudged that all claims in both of the above actions and all matters in controversy pertaining thereto exceed the sum of $2,500.00.

This is a final order and same should be entered forthwith and there is no just cause for delay, to all which plaintiffs object."

A second notice of appeal was filed on January 4, 1968, from the " * * * judgment entered herein dated December 7, 1967, and further appeal * * * from the amended judgment entered herein dated December 26, 1967." No subsequent designation of record was filed or served and the statement of appeal filed pursuant to RCA 1.090 specifies that:

"The judgment appealed from was entered on December 7, 1967, and may be found on page 27 of the Record on Appeal."

The December 7, 1967, judgment is recorded on page 27 and the amended judgment is found on page 33 of the record.

In support of its contention that the appeal was improperly taken appellees cite Hoy v. Newburg Homes, Inc., Ky., 325 S.W.2d 301 (1959), and a number of other cases but each of those authorities dealt with a notice of appeal (CR 73.02(2)·) and not a statement of appeal. RCA 1.090. They are inapplicable.

RCA 1.090 is designed to assist this court in processing records and compliance is not jurisdictional. The December 26, 1967, judgment was not complete in itself but was merely an addition to the December 7, 1967, judgment and was designed to clarify an inadvertent omis-sion. We do not consider the failure of appellants to specify in their statement of appeal the supplemental judgment entered December 26, 1967, as being fatal to the appeal. Stevens v. Coleman, 311 Ky. 313, 224 S.W.2d 149 (1949).

The lease was entered into on November 6, 1964, for a term beginning the following month. It provided that the owners would build a blacktop access road 31 feet wide from Highway 31W to Wilson Road but it was silent as to when this road was to be constructed. Only a rocked road served the car-wash building constructed by Wash-O-Rama. In May 1966 Wash-O-Rama abandoned the property and refused to pay additional rent. The owners contend that if they constructed the road at any time during the lease they would fulfill their obligations but the tenants insist that the owners were required to complete the road within a reasonable time and that having failed to do so their business was materially damaged and they had the right to terminate the lease and claim damages. The trial court noted that seventeen months had elapsed since the lease began and although there were numerous promises and discussions about the road nothing was done. It found that more than a reasonable length of time had elapsed; that the owners had " * * * breached the lease agreement to such extent that warranted the cessation of rental and termination of the lease by (the tenant), even though (the tenant) did occupy the property for another month or so after ceasing to pay rent."

Wash-O-Rama relies on Cox v. Hardy, Ky., 371 S.W.2d 945 (1963), to support its contention that the holding of the lower court " * * * is tantamount to a finding of constructive eviction." In the Hardy case we said "In order to have constructive eviction two conditions must exist: (1) an act or omission of the landlord which substantially interferes with the tenant's beneficial enjoyment of the leased premises, and (2) the tenant's abandonment of the premises by reason thereof." The tenant

argues that both conditions were found to exist here by the lower court's opinion and that the evidence supports that finding.

In response the owners point out that the road had been roughed in before May 1, 1966, and that the failure to blacktop the road was not an eviction. They contend that "The covenant in the lease to blacktop the road was independent of the covenant of the lease to pay the rent, and, therefore, performance of the covenant to blacktop the road was not a condition precedent to the right to enforce the lessee's covenant to pay the rent." They insist that there was no constructive eviction and that the lease contained no provision for forfeiture in the event of the failure of the owners to comply with the road-building provision. They refer us to other language in Cox v. Hardy, supra, which reads:

"The landlords contend that the obligations to pay rent and to repair are independent, and unless the lease expressly provides for forfeiture in the event of failure to repair, the tenants must still pay rent (with the possible right to set off against the rent a proper claim for damages). While this general proposition is sound, under certain circumstances a superseding legal principle is applicable. If the failure to repair results in the premises becoming untenantable, uninhabitable, or unfit for the purpose for which they were leased, and the tenant is thereby forced to leave, the landlord's dereliction will constitute 'constructive eviction' of the tenant. This terminates the lease and the obligation to pay rent.

\*   \*   \*   \*   \*   \*

"The basic issue in a constructive eviction case is whether the tenant abandoned the premises *because* of an intolerable situation created by the landlord. A substantial delay by the tenant in leaving the premises after the development of a particular condition would indicate he had not been ousted by the landlord rather than that he had waived his right to make such a claim."

While the lease did not limit the property to use for a carwash business it contained a provision that the owners would "not lease or knowingly sell to any party, any of their property within a radius of three miles of these premises for the purpose of competitive carwash business, during the term of this lease, or the option term, if it is exercised." The tenants erected a building and operated a carwash business in it. There was conflicting testimony as to the time within which the road could be constructed after necessary filling, grading and settling and there was evidence of what was a reasonable time within which to complete the road. With this evidence before it we cannot hold clearly erroneous, if at all erroneous, the finding of the trial court that a reasonable time had elapsed within which to build the road and that the property was " \* \* \* unfit for the purpose for which it (was) leased." Nor do we find error in its dismissal of the claim for rent on the theory that constructive eviction had occurred. Cox v. Hardy, supra. There being no cross-appeal we do not reach the question of whether the counterclaim was properly dismissed.

About March 1966 England and Smith listed nine tracts of land, including the one leased to Wash-O-Rama, with Reesor Auction Company to be sold at auction. Reesor was authorized to accept an offer for the Wash-O-Rama tract if it was as much as $30,000. At the auction that property was not sold, however, the evidence shows that appellee Johnson attended the auction and asked appellant Smith what it would take to buy the Wash-O-Rama property. He was told that $30,000 would be an acceptable price to which he replied that he would make a decision by 6:00 p. m. that evening. Johnson conferred with Spalding who went to Reesor's office. He testified that he was assured the road would be

completed before a deed would be delivered. Then he signed a printed form, the pertinent parts of which are accurately copied as follows:

"Elizabethtown

April 9, 1966, Hardin Co., Ky.

Through REESOR'S AUCTION COMPANY, as agents, I will (take-give) for the following described property in Hardin Co., Ky., 100 x 200 feet, more or less, and being Located in Radcliff—Ky.

With all improvements thereon and known as Radcliff WashaRama the sum of $30,000.00 As evidence of good faith binding this contract a deposit of $4,500.00 is made herewith to be applied on the purchase price upon passing of deed or refunded should title prove uninsurable or if this offer is not accepted. Balance payable as follows: Cash With Deed Within 60 Days. This Sale Subject to Lease in Full With Radcliff Washarama.

Except for the aforementioned encumbrances, an unencumbered, marketable title to said property to be conveyed by General Warranty, on or before 9 of June, 1966, with the usual covenants such as any title company will insure, except easements of record, restrictive covenants of regulations imposed by the Planning and Zoning Commission.

Possession of the above described property is to be given by with Deed 196__, 196__ taxes will be paid by (you, me, prorated from deed date).

Insurance None

Personal Property None

We have read the entire contents of this contract and acknowledge receipt of same. We are not relying on verbal statements not contained herein. We further certify that we have examined the property described hereinabove; that we are thoroughly acquainted with its condition and accept it as such.

Unless accepted by _____ M. _____ day of _____, 196__, the proposition is null and void.

The above proposition is accepted this 9 day of April, 1966.

BUYER   /s/ R. D. Johnson

/s/ George E. Spalding, Jr.      /s/ by George E. Spalding, Jr.

It is further understood that REESOR'S AUCTION COMPANY is due a commission of __% of sale price and that the same shall constitute a prior lien on the property mentioned herein.

SELLER _____      _____

SOLD BY /s/ Fraisur Reesor"

———◆———

The deposit check was made out and left with Reesor. Fraisur Reesor testified that the contract was signed by him that evening the way he accepts offers and that he " * * * considered it was a sale."

The next day Spalding, being apprehensive that the writing did not clearly specify the agreement with respect to the road, telephoned Reesor and arranged to see him the following day. At the appointed time

Spalding appeared at Reesor's office and a revised proposal was prepared and signed by Spalding. The revision made it clear that the road was to be completed before deed would be delivered or accepted. Spalding claims that he withdrew the first instrument which he terms a "proposal". Reesor testified that "Well, of course we had the other one. We would have to submit it to them before we could make any change." The road was not built, the deed was tendered but the purchasers declined to complete the transaction.

England and Smith argue that an auction sale was completed; that Reesor was their agent authorized to accept bids and that Spalding and Johnson are obligated to comply with the purchase agreement. The latter two deny that any sale was made at an auction. We agree therefore it is unnecessary for us to consider the cases cited with respect to auction sales.

Alternatively England and Smith contend that Reesor was their agent to make a sale of the property and that when he signed the form in his office a binding contract was made. They cite Speiss v. Martin, 192 Ky. 211, 232 S.W. 615 (1921) and Kramer v. Mobley, 309 Ky. 143, 216 S.W.2d 930 (1949), in support of their argument that Reesor was their broker with authority to bind them to a contract of sale and that he did so.

■ The evidence shows that the proposal which Spalding signed in Reesor's office and which was also signed at that time by Reesor was a binding contract inasmuch as Reesor had authority to accept for England and Smith. Speiss v. Martin, supra. The events of the following two days during which time a revised proposal was made are insignificant because there is no indication that Reesor had the authority to release Spalding and Johnson from a binding contract. The argument that England and Smith did not sign either proposal is also meaningless—they did not have to do so inasmuch as Reesor was engaged by them under a written and

signed listing contract to sell the subject real estate. Kramer v. Mobley, supra.

Conflicting testimony was introduced to show whether Reesor had authority to represent to any prospective buyer that the road would be built and whether he made such representations before the agreement was signed in his office. Although Johnson testified that he made it clear they did not want the property unless the road was constructed, it should be noted that no reference to the road was incorporated in the signed agreement.

The parol evidence rule prevents consideration of such evidence. Harvey v. Moran's Adm'r, Ky., 245 S.W.2d 452 (1952). That rule is explained in 30 Am. Jur.2d 149, Evidence, section 1016 as follows:

"The well-established general rule is that where the parties to a contract have deliberately put their engagement in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties, and the extent and manner of their undertaking, have been reduced to writing, and all parol evidence of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent."

Also see Restatement of the Law, Contracts, section 237, page 331.

This rule " * * * is one of positive or substantive law founded upon the substantive rights of the parties." Johnson v. Johnson, 297 Ky. 268, 178 S.W.2d 983 (1944). Also see 30 Am.Jur.2d 153, Evidence, section 1017. The signed contract was " * * * the repository of the final understanding and the measure of the parties' rights as a matter of substantive law." Johnson v. Johnson, supra. Cf. Mario's Pizzeria, Inc. v. Federal Sign and Signal Corp., Ky., 379 S.W.2d 736 (1964); 30 Am.Jur.2d 151, Evidence, section 1016.

■ The parol evidence rule is not referred to or discussed in the briefs presented to us therefore we do not examine it or determine how it might apply to the issues presented here. In the absence of that consideration there was sufficient evidence of probative value to sustain the judgment of the trial court, therefore, it is affirmed.

All concur.