Basil LEHIGH, et al., Appellants,

v.

R. R. RICHARDSON, Appellee.

Court of Appeals of Kentucky.

Dec. 11, 1970.

M. F. Schulten, Louisville, for appellants.

Manley N. Feinberg, Louisville, for appellee.

PALMORE, Judge.

By a written instrument dated August 10, 1964, the appellee, R. R. Richardson, leased certain premises and restaurant fixtures to the appellant Lehigh Corporation for a term of three years. As a part of the consideration the lessee agreed to pay rent at the rate of $200 per month for the real estate and $100 per month for the fixtures. The appellants Basil Lehigh and wife signed the lease to guarantee performance by their corporation, the lessee. On June 22, 1965, the parties executed a written amendment to the lease by which it was agreed that upon 10 days' written notice the lessor would remove his fixtures from the premises and the rent would thereafter be $200 per month.

At least ten days before January 10, 1966, the lessee notified the lessor to remove his fixtures. Admittedly, they were not removed. The lessee ceased to pay rent and the lessor eventually reoccupied the premises. The lessor then brought this suit for unpaid rent and damage to his fixtures. The principal defense asserted was that the lessor had breached the contract and prevented the lessee from making use of the leased premises. The jury found for the lessee on the damage claim but was directed to make an award for rent in the amount of $200 per month for 14 months (from January 10, 1966, to March 10, 1967, when the lessor acknowledges having reoccupied the premises) less credit for a $300 advance payment.

The lessee and guarantors appeal, contending they were entitled to have the jury determine whether the landlord's failure to remove his fixtures and to remedy certain plumbing conditions amounted to a constructive eviction of the tenant.

It was the opinion of the trial court, and we think rightly so, that there was no substantial evidence to support a verdict on the theory of constructive eviction.

The appellant Basil Lehigh (hereinafter Lehigh) personally operated the restaurant from August 10, 1964, until June 26, 1965, when he sold the business to Paul Taylor. Taylor would not agree to take it without some provision whereby he could escape the necessity of continuing to lease Richardson's fixtures at the rate of $100 per month, and it was for this reason that Richardson agreed to the lease amendment of June 22, 1965. The reason Lehigh sold the business to Taylor was that "I was losing money and I wanted to get out—I wanted to sell the restaurant and get out and Mr. Taylor approached me."

Despite his insistence on the amendment concerning the fixtures, Taylor continued the restaurant operation as before, using Richardson's fixtures, and apparently with the same lack of financial success. Without notice or warning, after the close of business on December 14, 1965, Taylor moved out in the middle of the night and, according to Lehigh, left the place looking as though it had been struck by a small cyclone. It was at some time between this date and the end of December, 1965, that Lehigh notified Richardson to remove his fixtures on or before January 10, 1966.

Richardson asked Lehigh if he might leave the fixtures in place for a short time in order to engage an auctioneer and have them sold, to which Lehigh agreed. Meanwhile, Lehigh sought to find another subtenant and showed the premises to several prospects, but without success. He admits he told these people the property was available either with or without Richardson's fixtures but says he had no choice, since Richardson had not complied with his notice to remove them. (We do not quite grasp this theory, but that was Lehigh's explanation.) He says also that he wanted to put in a sandwich shop of his own, but admits he did not pursue the idea to the extent of ascertaining what it would cost him or of arranging to acquire any fixtures and equipment of his own. Though he says Richardson's failure to remove the fixtures was the only reason he did not pay any more rent ("That is the only reason that I say cause I couldn't use the place. Mr. Richardson was occupying it."), he concedes that never at any time after the original notice and ensuing conversation about giving Richardson time to arrange a sale of the fixtures did he make a further inquiry or request with respect to their removal or indicate to Richardson that their continued presence in the premises was preventing a re-entry on his own part or a sublease to anyone else. And the simple truth of the matter is that there is no evidence that Richardson's failure to remove the fixtures actually had anything to do with the fact that Lehigh left the premises vacant after Taylor's departure, except insofar as Lehigh may have regarded it, mistakenly, as a legal excuse. His testimony that he was "ready, willing and able" to reoccupy the place but for Richardson's failure to comply with the notice is refuted by his admission that he kept looking for another tenant but was never able to find one.

That Richardson put signs in the restaurant windows, while the premises were vacant and unoccupied, advertising his fixtures for sale and other spaces in the building for rent, did not under the circumstances constitute a reoccupancy by Richardson. It was understood that Lehigh was trying to find somebody else to take the lease off his hands. Never once did he suggest to Richardson that he felt ousted or that he desired to reoccupy the building. It is quite obvious that the real purpose of the notice was to effect a $100 per month reduction in the rent, and nothing else.

"The basic issue in a constructive eviction case is whether the defendant abandoned the premises *because* of an intolerable situation created by the landlord." Cox v. Hardy, Ky., 371 S.W.2d 945, 946 (1963). Under the evidence produced in this case it would have been utterly unreasonable for the jury to find that Lehigh's failure to use or occupy the premises after January 10, 1966, actually resulted from any failure on Richardson's part to perform the contract. The action of the trial court in directing a verdict on this issue was therefore proper and correct.

The judgment is affirmed.

All concur.